UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DEREK COOPER GUNBY,<br><br>                    Defendant. | Criminal No. 21-cr-626<br><br>**DEFENDANT GUNBY'S MOTION TO DISMISS ON FIRST AMENDMENT GROUNDS** |

COMES NOW Defendant Derek Cooper Gunby ("Gunby"), by and through undersigned counsel John Pierce, with this Motion to dismiss the information in this case, on grounds that the charges violate the First Amendment both facially and as applied.

The information in this case chills the free speech, advocacy rights and petitioning rights of every American, in violation of the First Amendment.

## BACKGROUND

Gunby is charged by information with four misdemeanor counts: a violation of 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds), a violation of 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building), and a violation of 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds), and a violation of 40 U.S.C. § 5104(e)(2)(D) (Violent Entry and Disorderly Conduct on Capitol Grounds).

Each allegation is aimed wholly at Gunby's alleged petitioning for redress of grievances at the U.S. Capitol on Jan. 6; and at chilling expression and petitioning others who may come after.

The Statement of Facts in Gunby's case (ECF 1) states that:

> "On or about January 13, 2021, the Columbia, South Carolina Field Office of the FBI received information that DEREK GUNBY had posted photos and a video to Facebook indicating that he had been involved in the riot at the Capitol building."

The Statement of Facts then describes details of Gunby's alleged protestations, expressions of grievances, and remarks about politics, the direction of America and the 2020 presidential election on social media. Then the Statement of Facts described the FBI's investigation of Gunby:

> "Law enforcement also reviewed and collected video provided by the U.S. Capitol Police, which includes security camera footage inside and outside of the U.S. Capitol building. While reviewing this video footage, your affiant observed an individual who appears to be DEREK GUNBY *walking up and down a hallway* inside the Capitol building. DEREK GUNBY is wearing the same frayed camouflage baseball cap, military issued coat, dark-frame glasses, American flag bandana around his neck, and red backpack that is seen in the photos shown above. In the videos, DEREK GUNBY is also seen talking on a cell phone and holding up his cell phone to take photos or videos. Screenshots of the video are shown below.

Page 7 (emphasis added).

Thereafter the Statement of Facts provides several photos of crowds inside the Capitol, with red circles drawn around a man alleged to be Gunby. Then, on page 8:

> On or about February 1, 2021, your affiant [John Dyas, FBI officer] went to DEREK GUNBY's address in Anderson, South Carolina to conduct an interview of DEREK GUNBY. DEREK GUNBY provided a voluntary statement to your affiant. He stated that he went to Washington, D.C. on January 6, 2021 to listen to President Trump speak. He stated that after the President spoke, DEREK GUNBY followed the crowd that was moving toward the Capitol to protest the "stealing of the election." Your affiant asked DEREK GUNBY if he went inside the Capitol, to which DEREK GUNBY replied that he did. DEREK GUNBY stated to your affiant that *there was no one stopping him from going in, so he went in and walked around*.
>
>      *   *   *   *
>
> Based on the aforementioned evidence, there is probable cause to believe that DEREK GUNBY *was present* inside the U.S. Capitol building during the riot and related offenses that occurred at the U.S. Capitol building. located at l First Street, NW, Washington. D.C. 20510 on January 6, 2021 and *participated in* the obstruction of the Congressional proceedings.

Each of the allegations focus on Gunby's alleged presence in Washington, D.C. on Jan. 6, 2021, *mere presence* in the Capitol, and on Gunby's alleged grievances posted on social media. None of the counts alleges any violent, harmful, hurtful, deceptive, or traditionally criminal conduct which might be divorced from Gunby's mere peaceful political advocacy. Indeed, the charging instruments fail to offer any suggestion that Gunby's statement that "*there was no*

*one stopping him from going in, so he went in and walked around*" was untrue or not the whole truth.

According to well-settled law, Gunby's information must be dismissed, as the charges are aimed at chilling Gunby's (and millions of others') First Amendment protected rights.

## INTRODUCTION

Given that some 800 separate Jan. 6 defendants are charged with these above-mentioned statutes, one might think that these statutes' constitutionality is settled.  But previous courts considering protest restrictions at the U.S. Capitol have struck them down (at least, as applied in similar situations), and <u>no higher court has ever found</u> the total bans described in 40 U.S.C. Section 5104(e)(2)(G))(imposing a total ban on parading, demonstrating, or picketing in a Capitol Building) to be consistent with the First Amendment.

Of all the places in America, the U.S. Capitol must be <u>the most accessible</u> to the citizenry.  Conversely, the Capitol is perhaps the place in America where government has the <u>least authority</u> to restrict citizen presence, petitioning, demonstrating, and activism.  The First Amendment explicitly states that "Congress shall make no law" restricting free speech, peaceably assembling or interfering with the right to petition government for redress of grievances.  Thus, Congress is subject to the control and correction of the public according to the

plain text of the Constitution. See, e.g., *Lederman v. United States*, 291 F.3d 36 (DC Cir. 2002) (striking down a regulation banning leafleting and other "demonstration activities" on the sidewalk at the foot of the House and Senate steps on the East Front of the Capitol). The *Lederman* Court found that sidewalks around the Capitol are a public forum, and that a regulation banning leafleting and other "demonstration activities" at the foot of the House and Senate steps on the east side of the Capitol is unconstitutional.

In Count One, Gunby is accused of "knowingly enter[ing] and remain[ing] in the United States Capitol, a restricted building, without lawful authority to do so, in violation of 18 U.S.C. § 1752(a)(1))." But there is no law of Congress which makes the Capitol a restricted building. (Nor could Congress lawfully restrict the Capitol in such a way, as they have no constitutional authority to "make [any] law . . . abridging the freedom of speech, . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.") Section 1752(a) does not proclaim that the Capitol is a "restricted" building.

In fact, generally speaking, the Capitol is open to the public during normal business hours. Prior to January 6, the official website explicitly informed visitors that "The Capitol Visitor Center, the main entrance to the U.S. Capitol, is located beneath the East Front plaza . . . . The Capitol Visitor Center is open to visitors from 8:30 a.m. to 4:30 p.m. Monday through Saturday . . ."




It is simply not possible for the government to lawfully convict Gunby of "enter[ing] and remain[ing] in the United States Capitol, a restricted building, without lawful authority to do so," when (a) the Capitol's official signage and websites proclaim the building is open to the public, and (b) Gunby has a constitutional right, under the 1st amendment, to monitor, watch, advocate, petition, and protest regarding the work of representatives and officials inside the building.

Indeed, it can be argued that Gunby <u>has a civic duty</u> to monitor, observe, watch, and (try to) influence the goings-on inside the Capitol.

Although Gunby's right and duty to watch and monitor doings inside the Capitol may be subject to reasonable time, place, and manner restrictions, the government cannot prevent Gunby from exercising his constitutional rights and duties. <u>Gunby's right to enter the Capitol is not subject to the permission, will, or discretion of the government</u>. *Cf., inter alia*, *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994); *Ward v. Rock Against Racism*, 491 U.S. 781 (1989); *Weinberg v. City of Chicago*, 310 F.3d 1029 (7th Cir. 2002); *Bay Area Peace Navy v. United States*, 914 F.2d 1224 (9th Cir. 1990); *A Quaker Action Group v. Hickel*, 137 U.S. App. D.C. 176, 421 F.2d 1111 (D.C. Dir. 1969)).

Given these principles, the allegations against Gunby do not state offenses under federal law upon which any relief can be granted; and must be dismissed pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure.

## THE INFORMATION VIOLATES GUNBY'S 1ST AMENDMENT RIGHTS TO PARADE, DEMONSTRATE AND PICKET AT THE CAPITOL

Parading, demonstrating and picketing for redress of grievances is the birthright of every American. '[D]emonstrate' has been defined by the Supreme Court as "to make a public display of sentiment for or against a person or cause" and "picket" as an effort "to persuade or otherwise influence"). *Hill v. Colo.*, 530 U.S. 703, 721-22 (2000) (quoting Webster's Third New International Dictionary). The no-demonstration and no-picketing zone established by 40 U.S.C. § 5104(e)(2)(G)) in the entirety of a 1.5-million-square-foot building is the largest infringement on basic 1st amendment rights ever imposed anywhere in the United States.

The complaint and information against Gunby is aimed at chilling Gunby's (and millions of others)' right to petition and speak against perceived government abuses at the Capitol.  The government seeks to insulate congressional representatives, staff, officials and attendees from receiving the messages of Gunby and other protestors and petitioners.  Such efforts by the government are

undeniably unconstitutional. See, e.g., *Gresham v. Peterson*, 225 F.3d 899 (7th Cir. 2000)).

Under the 1st amendment, "free speech zones" are presumptively invalid everywhere. However, there are a tiny few temporary instances and secure spaces where courts have allowed limited restrictions on picketing and demonstration. Never, however, has any court allowed the government to silence and censor all petitioning and protesting in such a vast radius as the government seeks here.

A number of cases have recognized that certain officials or facilities are so highly-sensitive or protected that protestors can be confined to "free speech zones" at a given distance away. How far away, exactly? In *Madsen v. Women's Health Ctr*., 512 U.S. 753 (1994), the Supreme Court determined that a 300-foot buffer between protesters and the entrance to an abortion clinic was <u>too great a restriction</u> on speech, however, a thirty-six-foot buffer was acceptable. *Id*. at 771. The Court reasoned that "citizens must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to freedoms protected by the First Amendment." *Id*. at 774.

The late Judge Larry McKinney of the U.S. Southern District of Indiana dealt with a similar case involving a protestor who picketed a speech by Vice President Dick Cheney in 2002. *Blair v. City of Evansville*, 361 F. Supp. 2d 846

(S.D.In. 2005). Blair was arrested for "disorderly conduct" while merely holding a sign that stated "Cheney 19th Century Energy Man" at an event in Evansville, Indiana. Blair later sued arresting officers, and the court held that "the restriction of protesters to an area <u>500 feet</u> away from the only entrance used by attendees, and on the opposite end of the building from where Vice President Cheney would enter the facility and from where the majority of people attending the event would park, burdened speech substantially more than was necessary to further the [government's] goals of safety."

Even more than in *Blair*, the expansive speech and picketing restrictions here (effectively <u>the entire</u> 1.5 million square foot Capitol complex) are massively overexpansive and not narrowly tailored to serve a significant government interest. See *United States v. Albertini*, 472 U.S. 675, 689 (1985)). While the vice president and Congress can and should be properly protected from danger, the 1st amendment requires that the vice president and Congress cannot be entirely insulated from picketing and advocacy.

Judge McKinney found that the restriction of protesters to an area 500 feet away from the only entrance used by attendees, and on the opposite end of the building from where Vice President Cheney would enter the facility and from where the majority of people attending the event would park, burdened speech substantially more than was necessary to further the goals of safety.

> Furthermore, other cases that have looked at restrictions on access to public buildings similar to the Centre have found a violation of the First Amendment on more narrow restrictions. See, e.g.,*Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 861-62 (9th Cir. 2004) (200 and 265 feet security zones found over broad); *Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir. 1990) (seventy-five yard security zone found over broad because it prevented demonstration from reaching intended audience); but see *Madsen*, 512 U.S. at 771 (holding that a thirty-six-foot buffer zone on public property was narrow enough).

*Blair*, 361 F. Supp. 2d at 858.

Similarly to the 1,000-foot ban in *Weinberg v. City of Chicago*, 310 F.3d 1029, 1040 (7th Cir. 2002), Judge McKinney found that the location of the protest zone in *Blair* "eliminated any meaningful avenue for the communication of ideas by the protestors to at least one intended audience, the attendees."

Note that the government here is <u>asserting that the entire U.S. Capitol</u>—one of the largest public buildings in the United States—is a no free speech and no picketing zone.  According to the Architect of the U.S. Capitol:

> **As the nation has grown so has the U.S. Capitol : today it covers well over 1.5 million square feet, has over 600 rooms, and miles of corridors.**
>
> \*   \*   \*   \*
>
> **Today, the U.S. Capitol covers a ground area of 175,170 square feet, or about 4 acres, and has a floor area of approximately 16-1/2 acres. Its length, from north to south, is 751 feet 4 inches; its greatest width, including approaches, is 350 feet. Its height above the base line on the east front to the top of the Statue of Freedom is 288 feet.**

Architect of the Capitol, "The U.S. Capitol Building," (https://www.aoc.gov/explore-capitol-campus/buildings-grounds/capitol-building) (accessed 8/14/2022).

Significantly, some federal courts have *already held* that the West Front Lawn is a traditional public forum where demonstrations must be allowed. See also, e.g., Lederman, 291 F.3d at 44. In *Lederman*, the D.C. Circuit declared facially unconstitutional a "regulation banning leafleting and other 'demonstration activit[ies]' on the sidewalk at the foot of the House and Senate steps on the East Front of the United States Capitol." 291 F.3d at 39 (alterations in original). In finding that the law at issue in *Lederman* failed the narrow-tailoring analysis, the Court of Appeals cautioned that "the Constitution does not tolerate 'regulations that, while serving their purported aims, prohibit a wide range of activities that do not interfere with the Government's objectives.'" Id. at 44 (quoting *Cmty. for Creative Non-Violence v. Kerrigan* (CCNV), 865 F.2d 382, 390 (D.C. Cir. 1989)). Applying that principle, the panel concluded that the "ban's absolute nature" rendered the regulation not narrowly tailored, as "[s]ome banned activities" "cannot possibly" interfere "with the stated objectives of traffic control and safety." Id. at 45.

CONCLUSION

40 U.S.C. § 5104(e)(2)(G), which forbids "willfully and knowingly parad[ing], demonstrate[ing], or picket[ing] in any of the Capitol Buildings" is unconstitutional both on its face and as applied to the alleged conduct of defendant Gunby. Gunby is accused of nothing more than walking into the Capitol during normal business hours as part of a demonstration of expression regarding the fairness of the 2020 presidential election. Gunby has a 1st amendment right to express his opinions and petition government for redress of grievances in such a manner.

For all the above described reasons, the indictment in this case must be dismissed.

Dated: October 7, 2022          Respectfully Submitted,

John M. Pierce
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
Email: jpierce@johnpiercelaw.com
*Attorney for Defendant*

CERTIFICATE OF ELECTRONIC SERVICE

I hereby certify and attest that on October 7, 2022, I caused this document to be uploaded and filed in this case, using the electronic filing system established by the Court.  By doing so, I automatically served the document to counsel for the United States.

/s/ John M. Pierce
John M. Pierce