UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CASE NO. 21-cr-626-PLF |
| : | |
| DEREK COOPER GUNBY, : | |
| : | |
| Defendant. : | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS ON FIRST AMENDMENT GROUNDS**

The United States of America respectfully submits this opposition to defendant Derek Cooper Gunby's ("Gunby") motion to dismiss the information on First Amendment grounds (the "Motion," ECF No. 35). Specifically, Gunby argues that the charges in the information,[1] which stem from his participation in the unlawful breach of the United States Capitol Building on January 6, 2021, "chill[] the free speech, advocacy rights and petition rights of every American, in violation of the First Amendment." ECF No. 35, at 1. Gunby's proffered grounds for dismissal lack merit, and this Court should deny the Motion.

**BACKGROUND[2]**

Gunby is charged by a four-count criminal information with: (1) entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); (2) disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); (3)

---

[1] Although the "Conclusion" paragraph of the Motion suggests that Gunby is seeking dismissal only of Count Four (40 U.S.C. § 5104(e)(2)(G)), *see* ECF No. 35 at 14, Gunby makes arguments throughout the motion that appear to challenge all four counts of the information on First Amendment grounds. Therefore, for the purposes of this brief, the Government assumes that Gunby seeks dismissal of all four counts of the information on First Amendment grounds.

[2] The facts in this section are taken from the Statement of Facts filed with the Criminal Complaint. *See* ECF No. 1-1.

disorderly conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (4) parading, demonstrating, or picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).  *See* ECF No. 14.  These charges stem from Gunby's conduct within the U.S. Capitol Building on January 6, 2021, as a joint session of Congress convened to certify the 2020 presidential election.  The Capitol's exterior grounds were closed to the public and surrounded by law enforcement officers, barricades, and signage.

At 1:00 p.m., on January 6, 2021, a joint session of the United States Congress, consisting of the House of Representatives and the Senate, convened in the Capitol Building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election. With the Joint Session underway and with Vice President Michael Richard Pence presiding, a large crowd gathered outside the U.S. Capitol. "The mob [ . . . ] scaled walls, smashed through barricades, and shattered windows to gain access to the interior of the Capitol," with the first rioters entering shortly after 2:00 p.m. *Trump v. Thompson*, 20 F.4th 10, 10 (D.C. Cir. 2021).

Shortly thereafter, at approximately 2:20 p.m., members of the House and Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. The siege of the Capitol lasted for several hours and represented a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.7 million dollars in damage and losses. The siege of the U.S. Capitol on January 6, 2021, was "the most significant assault on the Capitol since the War of 1812." *Trump*, 20 F.4th at 18-19.

For his part, on January 6, 2021, Gunby posted photographs to his Facebook page showing himself in Washington, D.C. near the Capitol.  He captioned one of his photographs with "Up at

Zero Dark Thirty to stop this steal." Additional posts on his Facebook page show him at the "Stop the Steal" rally held on the Ellipse, in front of the Washington Monument, and on the Capitol Grounds. Open-source video and closed circuit television cameras (CCTV) show Gunby entering the Capitol through what is known as the Senate Parliamentarian Door. The CCTV video shows him walking down a hallway, and after a few minutes, he turns around and exits through the same door.

Later that day, Gunby posted a video to his Facebook page that shows him riding the Metro in Washington, D.C. During the video, Gunby stated, in part, the following:

> So yeah we went, we were in front of the White House earlier this morning, and then going into the afternoon, everyone headed down to the National Mall towards the Capitol. And we all pretty much surrounded the Capitol. We are at a point now in this country where they're going to listen to us. They have to listen to us. Your congressional leaders are not afraid of you. They are more afraid of the Chinese Communist party. They're more afraid of left wing media. And they are more afraid of ANTIFA and Black Lives Matter than they are of the American patriot, the American conservative, the American libertarian. The person who is on the right side of the Constitution.
>
> . . . .
>
> The American patriot in this country has been, we've been saints. Saints. Because the capability of America, and Americans, especially if we were the kind of people that the media always portrays us to be, we can take this country back pretty quickly. We didn't bring weapons. Americans that came here for this event did not bring weapons. That's saying a lot considering how late it is in this game. How much they have tried to take from us, and we are still not taking up arms against our government, against the Capitol. So, we surrounded the Capitol today. Eventually tear gas started flying. They started shooting tear gas. I got, I'm still, my lips are still burning from it.
>
> . . . .
>
> They detonated, it was like a flash bang with a, they did a lot of flash bangs and things, and people stayed peaceful. I don't care what the

media is telling you.  The media told you that, that we terrorized anybody, that the American patriot, that the Trumps supporters, that the people that were here to protest the stealing of the votes, of the election in this country.

. . . .

Came a little closer to some nightsticks and rubber bullets than we wanted to.  But, this was ultimately peaceful.  I do believe that the Metro police here in Washington do understand the stark difference between Trump supporters, the patriots, what have you, than say ANTIFA, Black Lives Matter.  The character is completely different.  There couldn't be more of a stark difference in justification, and intent, and capability.  If the American patriot wanted to storm this Capitol, take over this building, and take care of all of Congress in there, they could do it.  They could do it.

. . . .

They just tried to steal this election right in front of everybody's face.  And any of you, any of you, who are gonna sit there and look anybody in the face, and say that that didn't happen, that this election fraud didn't happen, that we're making it up, that it's unsubstantiated, you need to wake up.

## ARGUMENT

In his Motion, Gunby seeks dismissal of the information on First Amendment grounds.  He contends that "no law of Congress . . . makes the Capitol a restricted building," ECF No. 35 at 5, and that "[p]arading, demonstrating and picketing for redress of grievances is the birthright of every American," *id.* at 9.  For the reasons set forth below, both of these challenges fail.

### I.     Legal Standard

A defendant may move before trial to dismiss an information, or a count thereof, for "failure to state an offense."  *See* Fed. R. Crim. P. 12(b)(3)(B)(v).  The main purpose of a charging document, such as an indictment or (as here) an information, is to inform the defendant of the nature of the accusation.  *See United States v. Ballestas*, 795 F.3d 138, 148-149 (D.C. Cir. 2015) (discussing purpose of an indictment).  Thus, an information need only contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R.

4

Crim. P. 7(c)(1). When assessing the sufficiency of criminal charges before trial, an information "must be viewed as a whole and the allegations [therein] must be accepted as true." *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011)). The "key question" is whether "the allegations . . . , if proven, are sufficient to permit a petit jury to conclude that the defendant committed the criminal offense as charged." *Id.* The Honorable John D. Bates, U.S.D.J., in a recent memorandum opinion, recognized that there are two ways in which an information may fail to state an offense. First, "if the charged statutory provision is unconstitutional," and second, "if the offense charged does not apply to the defendant's conduct." *United States v. Nassif*, 21-CR-421, ECF No. 42, p. 3 (Sept. 12, 2022) (Bates, J.) (citations omitted).

As to First Amendment challenges, the Supreme Court has held that, "[f]acial challenges are disfavored." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 450 (2008). "To succeed in a typical facial attack, [a defendant] would have to establish that no set of circumstances exists under which [a statute] would be valid [ . . . ] or that the statute lacks any plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 472 (2010) (cleaned up). The Supreme Court recognizes a second type of facial challenge when dealing with First Amendment issues, whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* at 473 (cleaned up). The Supreme Court has recognized that to rule a statute as facially unconstitutional is "strong medicine" that it has employed "with hesitation, and then only as a last resort." *L.A. Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (cleaned up). In a so-called "as-applied" challenge, the defendant would necessarily show that even if there are no constitutional issues with the statute as-written, it could still "be applied in such a manner as to stifle free expression." *Thomas v. Chi. Park Dist.*, 534 U.S. 316, 323 (2002).

5

## II.     Counts One and Two Adequately State Offenses under 18 U.S.C. § 1752(a)

Section 1752(a)(1) authorizes the prosecution of any individual who "knowingly enters or remains in any restricted building or grounds without lawful authority to do so." 18 U.S.C. § 1752(a)(1).  Section 1752(a)(2) prohibits impeding or disrupting "the orderly conduct of Government business or official functions, engag[ing] in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions." *Id.* § 1752(a)(2)).  The term "restricted building or grounds" refers to, among other places, "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." *Id.* § 1752(c)(1)(B).  Because the U.S. Capitol Building was restricted on January 6 due to the attendance of the Vice President and his family (all of whom were Secret Service protectees), judges of this Court have recognized that the U.S. Capitol qualified as a "restricted building" on January 6, 2021.  *See, e.g.*, *United States v. Rodriguez*, No. 21-cr-246, 2022 WL 3910580, at *16-18 (D.D.C. Aug. 31, 2022); *United States v. Bingert*, No. 1:21-cr-91, 2022 WL 1659163, at *15-16 (D.D.C. May 25, 2022); *United States v. Puma*, No. 21-cr-454, 2022 WL 823079, at *16-19 (D.D.C. Mar. 19, 2022); *United States v. Andries*, No. 21-cr-93, 2022 WL 768684, at *16-17 (D.D.C. Mar. 14, 2022); *United States v. McHugh*, No. 21-cr-453, 2022 WL 296304, at *20-22 (D.D.C. Feb. 1, 2022).

Gunby's case is no different.  Both Counts One and Two of the information allege that on January 6, 2021, "the Vice President . . . [was] temporarily visiting" the United States Capitol and its grounds.  ECF No. 14, at 1-2.  Because these counts allege each element of Sections 1752(a)(1) and 1752(a)(2), no infirmity exists.

6

Gunby asserts that "no law of Congress . . . makes the Capitol a restricted building." ECF No. 35, at 5. But, as just explained, the U.S. Capitol Building qualified as a "restricted building" on January 6, 2021 under Section 1752(c)(1)(B) due to the Vice President's attendance and participation in the joint congressional session.

Gunby next insists that Congress could not "lawfully restrict the Capitol in such a way," ECF No. 35, at 5, and that he had a constitutional right to "monitor, watch, advocate, petition, and protest" the joint congressional session on January 6, ECF No. 35, at 8. His conclusory assertion presumes the U.S. Capitol Building's status as a public forum for public entry and expression on January 6, 2021. As explained below, however, the opposite is true; the U.S. Capitol Building is a *non*-public forum and Gunby had no First Amendment right to access it. *See infra*, pp. 12-13; *see also U.S. Postal Service v. Grenburgh Civic Ass'n*, 453 U.S. 114, 129 (1981) ("[T]he First Amendment does not guarantee access to property simply because it is owned or controlled by the government.").

Finally, Gunby references a posting on the U.S. Capitol website stating that "[t]he Capitol Visitor Center is open to visitors from 8:30 a.m. to 4:30 p.m. Monday through Saturday." ECF No. 35, at 7. Based on that notice, Gunby asserts a subjective belief that the entire U.S. Capitol Building was open and accessible on January 6, 2021.[3] Gunby is, of course, free to raise a defense at trial that he lacked knowledge that the building was restricted. But such a factual dispute is for trial; it is not an appropriate basis to seek dismissal of the charge. *See United States v. Hillie*, 227 F. Supp. 3d 57, 71 (D.D.C. 2017) (Jackson, J.) ("When testing the sufficiency of the charges in an

---

[3] Gunby did not enter the U.S. Capitol Visitor Center, but rather he entered through the Senate Parliamentarian Door, which had been breached open by other rioters.

indictment . . . 'the allegations [therein] must be accepted as true at this stage of the proceedings.'") (quoting *Bowdoin*, 770 F. Supp. 2d at 145).

Thus, here, the question is whether the information adequately charges each element of a Section 1752(a) offense. Because the answer is yes, the Motion should be denied.

### III.     Gunby's Constitutional Challenge to 40 U.S.C. § 5104(e)(2)(G) Fails

Section 5104(e)(2)(G) makes it a crime to "willfully and knowingly . . . parade, demonstrate, or picket in any of the Capitol Buildings." 40 U.S.C. § 5104(e)(2)(G). Gunby contends that this statute's prohibition on such activities in the U.S. Capitol Building violates the First Amendment. ECF No. 35, at 9-13. This argument lacks merit.

The First Amendment principles that govern Gunby's claim are well settled. A private speaker's right to access government property for expressive activity depends on whether the government has creates a forum for expression, and if so, what type of forum. "Traditional public fora are defined by the objective characteristics of the property, such as whether, 'by long tradition or by government fiat,' the property has been 'devoted to assembly and debate.'" *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). Restrictions on expression in traditional public fora must be narrowly drawn to achieve a compelling state interest. *Id.*; *see International Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 678 (1992) ("*ISKCON*"). The same test applies to designated public fora, property that the State has opened for expressive activity by part or all of the public. *Id.* For "all remaining public property," limitations on expressive activity are subject to a "much more limited review." *Id.* at 678-679. As long as the regulation is not an effort to suppress the speaker's activity due to disagreement with the speaker's view, the challenged regulation need only be reasonable. *Id.* at 679.

In examining whether a forum is public, courts look to the purpose, history, and location of the forum. *See ISKCON*, 505 U.S. at 679-680. Because the government, like other property owners, may "'preserve the property under its control for the use to which it is lawfully dedicated,' the government does not create a public forum by inaction." *Id.* (quoting *Greer v. Spock*, 424 U.S. 828, 836 (1976) (internal citation omitted)). The government also does not create a public forum "whenever members of the public are permitted freely to visit a place" that it owns or operates. *Greer*, 424 U.S. at 836. Rather, "[t]he decision to create a public forum must instead be made 'by intentionally opening a nontraditional forum for public discourse.'" *ISKCON*, 505 U.S. at 680 (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985)).

As three judges on this Court have correctly held, "the inside of the United States Capitol is a nonpublic forum for First Amendment forum analysis purposes." *Bynum v. U.S. Capitol Police Bd.*, 93 F. Supp. 2d 50, 56 (D.D.C. 2000) (Friedman, J.); *see also United States v. Nassif*, No. 21-cr-421 (D.D.C.) (ECF No. 42, at 8-9) (Bates, J.) (same); *United States v. Seitz*, No. 21-cr-279 (D.D.C.) (ECF No. 51, at 14) (Friedrich, J.) (same). In *Byrum*, this Court recognized that "the expression of ideas inside the Capitol may be regulated in order to permit Congress peaceably to carry out its lawmaking responsibilities and to permit citizens to bring their concerns to their legislators." 93 F. Supp. 2d at 55. Those controls "excludes [the building's] classification as a traditional public forum." *Id.* at 56. This Court also rejected the U.S. Capitol Building's classification as a designated public forum, observing that "the inside of the Capitol is not open to meetings by the public at large" and "[t]he government has a legitimate interest in ensuring that the activities of Congress proceed without disruption." *Id.*

In short, "Congress has not opened the Capitol as a public forum for free and open public discourse." *Id.* That was especially true on January 6, 2021, when security precautions for the

9

joint session and the upcoming presidential inauguration *and* the ongoing global pandemic meant that the Capitol building was not open to the public at large.

The undated screenshot from what appears to be the U.S. Capitol's website that Gunby includes in the Motion (ECF No. 35, at 7) does not undermine that straightforward analysis. Although there are no screen captures from the website on January 6, 2021, the Wayback Machine—a digital snapshot of various sites on the World Wide Web—captured how the U.S. Capitol's website looked on December 25, 2020,[4] and January 7, 2021,[5] and how it appeared on those two dates is identical.

While Gunby's screenshot is generally accurate, it does not show the whole picture. For example, just above the text "U.S. Capitol Visitor Center / Plan A Visit / Travel and Guidelines / Visitor Hours & Info" is the following notice:



*Image 1—A portion of a screenshot from the U.S. Capitol website as it appeared on December 25, 2020, and January 7, 2021.*

Anyone looking at the U.S. Capitol's website prior to January 6, 2021, would have seen a large notice advising of the "COVID-19 (coronavirus) Update," specifically that, "The Capitol Visitor Center is closed for tours. All tours are cancelled. We regret any inconvenience this may cause you, and we look forward to welcoming you to the Capitol Visitor Center at a future date."

---

[4] http://web.archive.org/web/20201225000110/https://www.visitthecapitol.gov/plan-visit/visitor-hours-info

[5] http://web.archive.org/web/20210107054455/https://www.visitthecapitol.gov/plan-visit/visitor-hours-info

Just below where Gunby's proffered screenshot cuts off, another section, titled "Admission and Passes" begins.



*Image 2*—*A portion of a screenshot from the U.S. Capitol website as it appeared on December 25, 2020, and January 7, 2021.*

The text of this section clearly states that "passes are required for tours of the historic Capitol." While it does qualify that by saying they "may be needed for other special events," it immediately states with no ambiguity that "All visitors to the Capitol are required to go through security screening." The words "security screening" are a hyperlink, and when clicked, the site redirects the viewer to a page regarding "Prohibited Items."[6] Finally, back on the main page, there is a section entitled Capitol Etiquette Information, which reads, "To ensure that everyone has an enjoyable visit to the Capitol, we ask that all visitors adhere to the Capitol Etiquette guidelines." The words "Capitol Etiquette" comprise another hyperlink that, when clicked, takes the viewer to a website[7] that outlines in detail the dos-and-don'ts of "entering the Capitol Visitor Center." One clearly visible request on the website advises would-be visitors: "The Capitol is a working office

---

[6] http://web.archive.org/web/20210107054423/https://www.visitthecapitol.gov/plan-visit/prohibited-items

[7] http://web.archive.org/web/20210107004802/https://www.visitthecapitol.gov/plan-visit/capitol-etiquette

building.  Therefore, you are expected to dress appropriately and behave in a respectful manner in this business environment."  In short, the website confirms that the Capitol was (and remains) a nonpublic forum.

"As a nonpublic forum, the government may restrict First Amendment activity in the Capitol so long as the restrictions are 'viewpoint neutral' and 'reasonable in light of the purpose served by the forum.'"  *Bynum*, 93 F. Supp. 2d at 56 (quoting *Cornelius*, 473 U.S. at 806).  Section 5104(e)(2)(G) easily clears that standard.  As Judges Bates and Friedrich recently held in rejecting similar First Amendment challenges, "[t]he statute contains nothing limiting its application to a particular viewpoint" and "targets activities that Congress reasonably could have concluded would disrupt its legislative process."  *Nassif*, *supra* (ECF No. 42, at 9); *see also Seitz*, *supra* (ECF No. 51, at 14) ("The statute does not discriminate based on the message of the demonstration, and by targeting noticeable public displays of multiple people, it is reasonably calculated to protect the orderly function of Congress.").  This Court should hold the same and reject Gunby's challenge.

Gunby further asserts a First Amendment "right to petition and speak against perceived government abuses at the Capitol."  ECF No. 35, at 9.  That contention fails because, as just explained, the U.S. Capitol building is a non-public forum and "there is no First Amendment right to express one's self in a nonpublic area."  *United States v. Caputo*, 201 F. Supp. 3d 65, 70 (D.D.C. 2016).

Gunby cites examples where courts have reviewed regulations restricting protests or other activity on public roads and sidewalks.  ECF No. 35, at 10-12; *see, e.g.*, *Madsen v. Women's Health Center*, 512 U.S. 753, 768-770 (1994) (affirming constitutionality of 36-foot buffer zone around clinic entrances and driveway); *Weinberg v. City of Chicago*, 310 F.3d 1029, 1036-1042 (7th Cir. 2002) (invalidating municipal peddling ban on public sidewalks within 1,000 feet of an arena);

*Blair v. City of Evansville*, 361 F. Supp. 2d 846, 858-859 (S.D. Ind. 2005) (holding unconstitutional restriction that limited protestors to location 500 yards away from entrance to building where Vice President Cheney appeared). Because the challenged limitations in those cases implicated expressive activity in a public forum, courts evaluated whether they were "reasonable restrictions on the time, place, or manner of protected speech," that were "narrowly tailored to serve a significant governmental interest," and "lef[t] open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

In this case, by contrast, the U.S. Capitol Building is a non-public forum. To pass First Amendment scrutiny, Section 5104(e)(2)(G)'s prohibition on parades, demonstrations, and picketing in the U.S. Capitol Building need only be viewpoint neutral and a reasonable means of advancing the purpose of this forum: housing the legislative functions of Congress. As Judge Friedrich correctly held in *Seitz*, Section 5104(e)(2)(G) plainly clears those minimal hurdles.

Gunby also cites the D.C. Circuit decision in *Lederman v. United States*, 291 F.3d 36 (D.C. Cir. 2002), classifying the U.S. Capitol front sidewalk as a public forum and invalidating a leafleting restriction at that location. ECF No. 35, at 12. If Section 5104(e)(2)(G) criminalized parades, demonstrations, or picketing on the sidewalk, *Lederman* might be relevant to Gunby's claim. But because the statute applies only to "Capitol Buildings," and not to the grounds and sidewalks surrounding them, the decision is inapposite.

**IV.   Gunby's Claim is Premature**

Gunby's First Amendment claims are premature because they require an analysis of Gunby's conduct, which is not before the Court at this stage in this case.

Gunby advances the blanket assertion that any violation of 18 U.S.C. §§ 1752(a)(1), 1752(a)(2), or 40 U.S.C. §§ 5104(e)(2)(D), 5104(e)(2)(G) necessarily involves speech or conduct protected by the First Amendment. To be sure, certain conduct "such as picketing or

13

demonstrating" may be so closely associated with speech as to warrant First Amendment protection, *see Virginia v. Hicks*, 539 U.S. 113, 124 (2003), at least where the picketing is "peaceful." *See United States v. Grace*, 461 U.S. 171, 176 (1983). But no evidence of Gunby's precise conduct is before the Court; the record consists of the allegations in the information. Gunby may raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the government "has made a *full* proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241-42, 246-47 (D.C. Cir. 2005) (emphasis added)—neither of which has occurred here. Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010); *see Yakou*, 428 F.2d at 246-47 ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context").[8] No record of the defendant's conduct yet exists in this case, which involves Gunby's participation in a siege at the United States Capitol that involved significant violence against police officers and forced lawmakers meeting in a joint session to evacuate from their respective chambers. This Court should therefore deny his First Amendment challenge as premature.

---

[8] Gunby's reliance on First Amendment challenges in civil cases is accordingly flawed. The cross-motions for summary judgment at issue in *Lederman v. United States*, 89 F. Supp. 2d 29 (D.D.C. 2000), identified "undisputed," *id.* at 30, facts showing that the plaintiff sought to distribute leaflets, *id.* at 31, a practice long recognized as falling within the ambit of the First Amendment. *See Grace*, 461 U.S. at 176.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that Gunby's Motion to Dismiss on First Amendment Grounds be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: *s/ Christopher D. Amore*
Christopher D. Amore
Assistant United States Attorney
Capitol Riots Detailee
N.Y. Bar No. 5032883
601 D Street NW
Washington, DC 20001
(973) 645-2757
christopher.amore@usdoj.gov

Kyle M. McWaters
Assistant United States Attorney
D.C. Bar No. 241625
601 D Street NW
Washington, DC 20001
(202) 252-6983
kyle.mcwaters@usdoj.gov

**CERTIFICATE OF SERVICE**

On this 28th day of October 2022, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

    *s/ Christopher D. Amore*
CHRISTOPHER D. AMORE
Assistant United States Attorney