UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>DEREK COOPER GUNBY,<br><br>        Defendant. | Criminal No.:   21-cr-626<br><br>**DEFENDANT GUNBY'S MEMORANDUM IN REPLY TO THE UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE** |

COMES NOW Defendant Derek Cooper Gunby ("Mr. Gunby") with this Memorandum in Reply to the United States' Opposition to Defendant's Motion to Transfer Venue (ECF No. 43), filed on October 28, 2022.

I.      INTRODUCTION

The Government argues that Mr. Gunby's motion to transfer venue should be denied because the District of Columbia jury pool is not inherently biased against January 6 defendants, and that twelve impartial jurors will likely be found among the eligible residents of the District of Columbia during voir dire.  ECF No. 43, at 11. However, while the Government mentions that over eight-hundred individuals who were present at the U.S. Capitol on January 6 have faced criminal charges, that "[e]very judge on this Court to have ruled on a motion for change of venue in a January 6 prosecution has denied the motion,"[1] and that multiple January 6-related jury trials have already occurred, the Government astonishingly fails to recognize that far more than twelve impartial individuals are required to prosecute the hundreds of remaining January 6 trials, including the instant case.  In a venue with the characteristics of those in the District of Columbia jury pool, with substantial pretrial publicity that continues to the present day, and with evidence of juror partiality, voir

---

[1] ECF No. 43, at 1 n.1.

dire is unnecessary to uncover "so great a prejudice against the defendant" that would require transferring the case to a district in which the defendant may receive a fair and impartial trial. *See Skilling v. United States*, 561 U.S. 358, 378 (2010).

  II.  ARGUMENT

    A. The *Skilling* Factors Support a Presumption of Prejudice In The Instant Case

While the Constitution generally requires criminal trials to "be held in the State where the said Crimes shall have been committed," U.S. Const. Art. III, § 2, cl.3, the venue is constitutionally required to be transferred when "extraordinary local prejudice will prevent a fair trial." *Skilling*, 561 U.S. at 378. While voir dire is generally utilized to recognize and remove jury bias, "prejudice to the defendant's rights may be presumed" in "extreme circumstances." *United States v. Haldeman*, 559 F.2d 31, 63 (D.C. Cir. 1967). The *Skilling* factors which district courts generally weigh to analyze whether a change of venue is warranted are: (1) the size and characteristics of the community; (2) the nature and extent of the pretrial publicity; (3) the proximity between publicity and the trial; and (4) evidence of juror partiality. *Skilling*, 561 U.S. at 382-83. All of these factors warrant a change of venue in this case.

    1. The Size and Characteristics of the District of Columbia Create Inherent Bias Against January 6 Defendants

The Government argues that the fact that 90% of the District of Columbia's voters voted for the Democratic Party candidate in the 2020 Presidential Election is irrelevant to the determination of venue. ECF No. 43, at 5-6. In support of its argument, the Government cites "politically charged cases" involving "[h]igh-profile individuals strongly associated with a particular party" that have been tried in the

District of Columbia.  *Id.* at 6-7.  The Government states that "the fact that most District residents voted against Donald Trump does not mean those residents could not impartially consider the evidence against those charged in connection with the events on January 6."  *Id.* at 7.

However, the Government fails to recognize that none of the defendants in the cited cases were tried simultaneously with over eight hundred other defendants being charged with similar or identical crimes arising from the same event.  The cited cases involved few "high-profile individuals," and each required only twelve impartial individuals out of the entire eligible population of the District of Columbia.  While Mr. Gunby's trial also requires only twelve impartial individuals, his trial will follow multiple January 6-related jury trials.[2]  The Government even recognizes that a total of 239 prospective jurors underwent examination for the first five January 6-related jury trials, which required a total of sixty "impartial" jurors to be found.[3]  Presumably, these prospective jurors will not be invited to participate in jury selection for other January 6 defendants.  If every single January 6 defendant were to exercise their Sixth Amendment rights to a jury trial, then approximately 48,000 individuals would be summoned as potential jurors, and over 9,600 impartial individuals would need to be identified.

Moreover, despite the Government's claims that "the voir dire that took place [in the first five January 6-related jury trials] undermines the defendant's claim that prejudice should be presumed,"[4] the January 6 jury trials that have already occurred indicate the intense bias felt by District of Columbia residents.  During Guy Reffitt's jury selection, for example, several potential jurors "spoke passionately about their

---

[2] *See* CAPITOL BREACH CASES, U.S. DEP'T OF JUST., https://www.justice.gov/usao-dc/capitol-breach-cases (last accessed Nov. 7, 2022).
[3] *See* ECF No. 43, at 16-19.
[4] ECF No. 43, at 16.

fear during the attack on the Capitol and their disgust toward its perpetrators."[5] Some stated "outright that they could not be impartial toward Reffitt."[6] One passionately declared that he "felt like it was an attack on [his] home," and another stated that "Everybody who went in there is already guilty. . . . They should be prosecuted to the max."[7]

Furthermore, the Government conveniently ignores the fact that Matthew Bledsoe's potential jury pool was so biased that Chief Justice Howell pressured potential jurors to claim impartiality in order to rehabilitate them and have a full jury.[8] During Bledsoe's jury selection, potential jurors made statements such as "what happened on January 6th is a stain in America's History," and some admitted that they could not remain "fair and impartial."[9] A courtroom observer noted, "[W]hat I saw with my very own eyes and heard are potential jurors that are mostly biased towards what happened on J6 – not just for Bledsoe's actions, but for his political beliefs."[10] Twelve jurors and two alternates were sworn in after "Chief Justice Beryl Howell pressured the potential jurors that blatantly said they could not be impartial to agree that they were capable of 'ignoring their biases' in order to salvage them for the jury, until they finally agreed under the pressure."[11] "If there were no rehabilitated jurors, there would literally be no jury."[12]

---

[5] Katelyn Polantz et al., *Jury Pool for First Capitol Riot Trial Still Stung by Attack*, CNN (Feb. 28, 2022), https://www.cnn.com/2022/02/28/politics/reffitt-january-6-trial-jury-pool.
[6] *Id.*
[7] *Id.*
[8] Cara Castronuova, *Gateway Pundit: Polls Show Extreme Jury Bias In January 6 Trials*, YOUR NEWS (July 19, 2022), https://yournews.com/2022/07/19/2380134/gateway-pundit-polls-show-extreme-jury-bias-in-january-6/.
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*

Similarly, during Stewart Rhodes's jury selection, "it became clear that for many DC residents, the emotions of January 6 are still raw."[13] Multiple potential jurors felt biased against January 6 defendants because of the proximity of the January 6 events to the potential jurors' homes.[14] Others called the events "disconcerting," and another cried.[15]

While it is clearly apparent that many January 6 defendants chose to forego jury trials, the jury selections that have already occurred have demonstrated the difficulty in finding impartial jurors in the District of Columbia. As of October 6, 2022, approximately 412 January 6 defendants had pleaded guilty, 21 defendants had been found guilty at contested trials, and approximately 280 defendants had received sentences.[16] The outcomes of the closed January 6 cases likely increase the bias that the remaining January 6 defendants are guilty in the minds of District of Columbia residents who may have previously been impartial.

        2.   The Nature and Extent of the Pretrial Publicity Heavily Prejudices the District of Columbia Community

The Government contends that a fair trial may be held in the District of Columbia despite the volume of news coverage of January 6.[17] While Mr. Gunby's case does not "involve an inadmissible 'confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight,'"[18] the coverage of January 6, the January 6 House Select Committee, Donald Trump's subpoena by the January 6 Committee, new arrests, guilty pleas,

---

[13] Holmes Lybrand & Hannah Rabinowitz, *DC Residents Say They Can Be Impartial As Potential Jurors in Oath Keepers Trial But Emotions Remain Raw Over Jan. 6 Attack*, CNN (Sept. 27, 2022), https://www.cnn.com/2022/09/27/politics/oath-keepers-trial-jurors-january-6/index.html.
[14] *Id.*
[15] *Id.*
[16] 21 Months Since the Jan. 6 Attack on the Capitol, U.S. Dep't of Just., https://www.justice.gov/usao-dc/21-months-jan-6-attack-capitol (last accessed Nov. 7, 2022).
[17] ECF No. 43, at 12.
[18] *Id.*

convictions, and sentences have remained relentless.[19] January 6 is likely to remain a staple of daily news articles, as some tout that "the Justice Department still announces multiple new arrests each week, and hundreds more rioters have been identified but not yet charged. Federal prosecutors have told D.C. District Court Chief Judge Beryl Howell that it's 'not an unreasonable expectation' that more than 2,000 cases could be filed."[20]

As mentioned above, the more January 6 defendants that plead guilty and become convicted of crimes identical to those which Mr. Gunby faces, the more likely that publicity of those cases will lead the jury pool to assume that Mr. Gunby should be found guilty as well. The Government claims that "[t]he Court can guard against any spillover prejudice from the broader coverage of January 6 by conducting a careful voir dire and properly instructing the jury about the need to determine a defendant's individual guilt."[21] Further, the Government posits that "any threat of such spillover prejudice is not limited to Washington, D.C. because much of the news coverage of January 6 has been national in scope."[22] However, as mentioned above, courts have struggled to retain enough "impartial" jurors for the January 6-related trials that have already occurred because potential jurors view the event *as a whole* as an attack on their homes, and they presume that each defendant had a role in making the jurors feel unsafe.

---

[19] A simple Google search of "January 6 news" returns multiple pages of news articles written about January 6 within the past week alone.
[20] Sarah D. Wire, *Ripples for Years to Come: What the Jan. 6 Cases Mean for the Judicial System*, LOS ANGELES TIMES (Oct. 31, 2022), https://www.latimes.com/politics/story/2022-10-31/jan-6-cases-weigh-on-dc-court.
[21] ECF No. 43, at 13.
[22] *Id.*

3. The Time Between January 6, 2021, and the Trial Will Be Close to Two Years, But Pretrial Publicity Has Not Diminished

The Government argues that, because "20 months have already elapsed since the events of January 6, and more time will elapse before trial," enough time will have elapsed to reduce juror bias.[23] The Government further contends that "Although January 6 continues to be in the news, the 'decibel level of media attention [has] diminished somewhat.'"[24] However, as mentioned above, January 6 and all related occurrences remain prominent in the news *nearly every day*. The amount of time that has passed does not diminish the "raw emotions" that District of Columbia residents still feel.[25]

4. There Is Vast Evidence of Juror Partiality Against All January 6 Defendants

While Mr. Gunby has not yet faced a biased jury, the Courts have experienced difficulty securing impartial juries in the January 6-related cases that have already occurred, as mentioned above. Surely, securing an impartial jury will only become more difficult as the jury pool dwindles and as potential jurors become more biased upon being bombarded with continuous January 6-related news coverage.

III. CONCLUSION

For the foregoing reasons, Mr. Gunby respectfully submits this memorandum in reply to the Government's Opposition to Defendant's Motion to Transfer Venue.

---

[23] *Id.*
[24] *Id.*
[25] *See* Lybrand & Rabinowitz, *supra* note 12.

Dated: November 8, 2022		Respectfully Submitted,

<div style="margin-left:3em">

/s/ John M. Pierce
John M. Pierce
John Pierce Law, P.C.
2550 Oxnard Street
3rd Floor, PMB# 172
Woodlands, Hills, CA 91367
jpierce@johnpiercelaw.com
(213) 279-7648

*Attorney for Defendant*

</div>

**CERTIFICATE OF SERVICE**

I, John M. Pierce, hereby certify that on this day, November 8, 2022, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

/s/ John M. Pierce
John M. Pierce