UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 21-0626 (PLF) |
| | ) | |
| DEREK COOPER GUNBY, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

Defendant Derek Cooper Gunby is charged in a four-count information ("Information") based on conduct related to the events at the United States Capitol on January 6, 2021. See Information [Dkt. No. 14]. A bench trial in this case is scheduled to begin on October 2, 2023. See Second Amended Scheduling Order [Dkt. No. 53]. Mr. Gunby has filed a motion in limine to preclude the government from arguing the "raindrop theory" of criminal liability during trial. See Defendant Gunby's Motion In Limine to Preclude the Government's "Raindrop Theory" ("Raindrop Mot.") [Dkt. No. 56].[1] The Court has carefully considered Mr. Gunby's written submission and the applicable authorities. For the following reasons, the Court will deny Mr. Gunby's motion.

---

[1]     The Court has reviewed the following documents:  Statement of Facts [Dkt. No. 1-1]; Information [Dkt. No. 14]; and Defendant Gunby's Motion In Limine to Preclude the Government's "Raindrop Theory" ("Raindrop Mot.") [Dkt. No. 56].  Because Mr. Gunby's motion did not contain page numbers, citations to his pleading refer to the electronic case filing page numbers.

## I.  BACKGROUND

The events of January 6, 2021 are summarized in the Court's opinion in United States v. Puma.  See United States v. Puma, 596 F. Supp. 3d 90, 93-94 (D.D.C. 2022).  The United States alleges that Mr. Gunby was a member of the crowd that entered the Capitol building on January 6, 2021 and engaged in certain activities while there.  See Information.  The Statement of Facts accompanying the criminal complaint describes video footage that depicts Mr. Gunby inside the Capitol building on January 6.  See Statement of Facts at 6-8.  The video footage shows Mr. Gunby walking inside of the Capitol, holding a cell phone and taking photos on his cell phone.  See id.  On February 1, 2021, an FBI agent interviewed Mr. Gunby, and Mr. Gunby admitted during the interview that he entered the Capitol building on January 6.  See id. at 8.  He explained during the interview that no law enforcement or security personnel tried to stop him from going into the Capitol building, and he showed the FBI agent video he had taken that day with his phone.  Id. at 8-9.  The Statement of Facts also describes a livestream video that Mr. Gunby posted to his Facebook account on January 6, 2021.  Id. at 4.  The video appears to depict Mr. Gunby on the Metro after leaving the Capitol.  Id.  In the video, Mr. Gunby stated:

> [W]e surrounded the Capitol today.  Eventually tear gas started flying.  They started shooting tear gas. . . . my lips are still burning from it. . . . They detonated, it was like a flash bang . . . . Came a little closer to some nightsticks and rubber bullets than we wanted to.  But, this was ultimately peaceful . . . . If the American patriot wanted to storm this Capitol, take over this building, and take care of all of Congress in there, they could do it.

Statement of Facts at 5-6.

On August 10, 2021, Mr. Gunby was arrested in South Carolina.  See Executed Arrest Warrant [Dkt. No. 9].  On October 12, 2021, the government charged Mr. Gunby by information with four misdemeanor offenses:  Entering and Remaining in a Restricted Building

or Grounds, in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a

Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Violent Entry and

Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and

Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C.

§ 5104(e)(2)(G).  See Information.  Mr. Gunby filed the instant motion in limine on July 27,

2023.  See Raindrop Mot.


## II.  LEGAL FRAMEWORK

Courts evaluate the admissibility of evidence on a pretrial motion in limine

according to the framework established by Rules 401 and 402 of the Federal Rules of Evidence.

See Daniels v. District of Columbia, 15 F. Supp. 3d 62, 66-67 (D.D.C. 2014); see also

Democracy Partners, LLC v. Project Veritas Action Fund, Civ. Action No. 17-1047, 2022

WL 3334689, at *3 (D.D.C. Aug. 12, 2022); United States v. Sutton, Crim. No. 21-0598, 2023

WL 13940371, at *3 (D.D.C. Oct. 23, 2022).  First, "the Court must assess whether the evidence

is relevant."  Daniels v. District of Columbia, 15 F. Supp. 3d at 66.  "Evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the

evidence; and (b) the fact is of consequence in determining the action."  FED. R. EVID. 401.

"Relevant evidence is admissible" unless an applicable authority provides otherwise, whereas

"[i]rrelevant evidence is not admissible."  FED. R. EVID. 402.  The proponent of admitting an

item of evidence has the initial burden of establishing relevance.  See United States v. Oseguera

Gonzalez, 507 F. Supp. 3d 137, 147 (D.D.C. 2020).

Even if the proponent of an item of evidence can demonstrate its relevance,

however, a court may still conclude that it is inadmissible if "the United States Constitution; a

federal statute; [the Federal Rules of Evidence]; or other rules prescribed by the Supreme Court"

3

provide for its exclusion. FED. R. EVID. 402.  Furthermore, Rule 403 of the Federal Rules of

Evidence provides that a court may "exclude relevant evidence if its probative value is

substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the

jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID.

403.  Although arguments of counsel are not evidence, the Court may allow motions in limine

about counsels' argument "pursuant to the district court's inherent authority to manage the

course of trials." Barnes v. Dist. of Columbia, 924 F. Supp. 2d 74, 78 (D.D.C. 2013) (internal

quotation omitted).

### III. DISCUSSION

Mr. Gunby moves the Court to preclude the government from presenting at trial

its "raindrop theory" of criminal liability – which, he contends, provides "that any person or

citizen who dares to participate in a First-Amendment protest or demonstration is acting as an

illegal 'raindrop' and can therefore by convicted of crimes based upon the 'flood' of others who

commit crimes during a riot." Raindrop Mot. at 5.  He asserts: "Individuals do things.  Crowds

do not." Id. at 2.

### A.  Mr. Gunby's Bases for Objecting to the "Raindrop Theory"

In support of his motion, Mr. Gunby appears to rely on jury instructions of

ambiguous origin that caution against "imput[ing] or transfer[ing] guilt to another Defendant"

solely because the government has introduced evidence that someone else has committed a

crime. Raindrop Mot. at 1-2.  He provides no citation to any written or oral judicial decision –

state or federal – or trial transcript from which this purported jury instruction comes.

Mr. Gunby also points to the litigation in Dream Defenders v. Governor of the

State of Florida, 57 F.4th 879 (11th Cir. 2023).  See Raindrop Mot. at 3.  Plaintiffs in that case

challenged a Florida criminal law that prohibited individuals from committing "riots." Dream

Defenders v. Governor of the State of Florida, 57 F.4th at 889; Dream Defenders v. DeSantis,

559 F. Supp. 3d 1238, (N.D. Fla. 2021).  The statute at issue there, Section 870.01, prohibits the

commission of a "riot" and provides that:

> A person commits a riot if he or she willfully participates in a violent
> public disturbance involving an assembly of three or more persons,
> acting with a common intent to assist each other in violent and
> disorderly conduct, resulting in:
>
>> (a) Injury to another person;
>> (b) Damage to property; or
>> (c) Imminent danger of injury to another person or damage to
>>     property.

Fla. Stat. § 870.01(2); see Dream Defenders v. Governor of the State of Florida, 57 F.4th at 891.

Chief Judge Mark E. Walker, of the U.S. District Court for the Northern District

of Florida, concluded that the statute is both vague and overbroad, holding in part that the

statute's definition of "riot" fails to provide "notice of what acts it criminalizes and encourages

arbitrary and discriminatory enforcement, making this provision vague to the point of

unconstitutionality." Dream Defenders v. DeSantis, 559 F. Supp. 3d at 1282.  Chief Judge

Walker further concluded that the statute was overbroad because "in its ambiguity, it also

consumes vast swaths of core First Amendment speech" in addition to prohibiting unprotected,

violent conduct. Id. at 1283.[2] According to Mr. Gunby, the Dream Defenders litigation

demonstrates that "individual-liability-for-a-mob's-behavior" is an inappropriate theory of

---

[2]      Reviewing the district court's decision to grant a preliminary injunction, the
Eleventh Circuit deferred its decision on whether the plaintiffs had met their burden and certified
a question to the Florida Supreme Court to clarify the meaning of Section 870.01 before
addressing the statute's constitutionality.  Dream Defenders v. Governor of the State of Florida,
57 F.4th at 893-95.

criminal liability.  Raindrop Mot. at 4-5.  He asks this Court to preclude the government from inviting the factfinder here to determine guilt based on this theory at trial.  Id.

The Dream Defenders case does not inform this Court's analysis of Mr. Gunby's motion in limine.  That case is frankly irrelevant.  As explained by Chief Judge Walker, that litigation concerned Due Process and First Amendment challenges to an entirely different criminal statute – a statute that Mr. Gunby is not charged with violating and bears little resemblance to the statutes under which he is charged.  Compare Dream Defenders v. DeSantis, 559 F. Supp. 3d at 1282 and Information.  Dream Defenders does not give this Court any reason to restrict the government's ability to employ certain analogies during the presentation of its evidence at trial or during opening and closing arguments.

### B.  Mr. Gunby's Enumerated Requests

Mr. Gunby specifically asks this Court to prohibit and preclude:

(1)  the government from telling or arguing to the jury that a person can be criminally liable for the crimes of a mob, for merely standing or peacefully assembling or walking in a location . . .

(2) the government from telling or arguing to the jury that a person can be convicted of the crimes alleged in this case by merely witnessing acts of others, or standing or walking in a given place . . . [and]

(3) the government from arguing that an individual who is merely present can be convicted as a "raindrop" amid a rainstorm of others who cause violence or disruption of events.

Raindrop Mot. at 5.

With respect to Mr. Gunby's first enumerated request and a portion of his second – that the government be prohibited from arguing that he can be convicted "for merely standing or peacefully assembling or walking in a location" – the Court observes that Mr. Gunby can

indeed be held criminally responsible for "standing or peacefully assembling or walking in a location" under Count One, which charges Entering or Remaining in a Restricted Building or Grounds, so long as the government establishes the other elements of that offense. See Information at 1; 18 U.S.C. § 1752(a)(1).

With respect to Mr. Gunby's second request – that the government not be permitted to argue that "merely witnessing the acts of others" is sufficient for criminal liability – the Court concludes that what Mr. Gunby witnessed is directly relevant to his knowledge and intent. See Raindrop Mot. at 5. See United States v. Griffith, Crim. No. 21-0244, 2023 WL 2043223, at *3 (D.D.C. Feb. 16, 2023) ("[W]hat Defendant saw and heard around him goes precisely to his knowledge and intent. What he was able to observe around him at the Capitol informs his actions and mental state at the time of the charged offenses." (quotations omitted)); United States v. Rhine, Crim. No. 21-0687, 2023 WL 2072450, at *7 (D.D.C. Feb. 17, 2023) ("[E]vidence of the conduct of others at the Capitol on January 6 that Defendant was aware of or reasonably could have perceived because it occurred near him such that he could have seen or heard it is relevant and admissible because it speaks to the nature of his conduct under the circumstances and his mental state."). Although merely observing the conduct of others is insufficient by itself to establish criminal liability for any of the offenses with which Mr. Gunby is charged, the government may introduce evidence about his observations of others' actions to establish his mental state when he took certain actions.

Finally, Mr. Gunby asks that the government not be permitted to argue that "an individual who is merely present can be convicted as a 'raindrop' amid a rainstorm of others who cause violence or disruption of events." Raindrop Mot. at 5. Relatedly, he asks the Court to prohibit the government from arguing that he can be liable "for the crimes of a mob." Id. This

request appears directed at Count Two, which charges Mr. Gunby with Disorderly and

Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2).

See Information at 2-3.  As Judge Colleen Kollar-Kotelly has explained, Section 1752(a)(2)

requires the government prove beyond a reasonable doubt that:

> (1) the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building;
>
> (2) the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions; and
>
> (3) the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

United States v. Rivera, 607 F. Supp. 3d 1, 8 (D.D.C. 2022).  Focusing on the statutory terms

"disruptive" and "disorderly," Judge Kollar-Kotelly said the following about the causal

connection between a person's conduct and the disruption of government functioning under

Section 1752(a)(2):

> Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood.  Only when all of the floodwaters subside is order restored to the field.  The same idea applies in these circumstances.  Many rioters collectively disrupted Congressional proceedings, and each individual rioter contributed to that disruption. . . .
>
> Because [this defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the Court concludes that [this defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions.

Id. at 9.

This Court – joining other judges of this district – agrees with Judge Kollar-

Kotelly's reasoning.  Section 1752(a)(2) does not require that a person "be the but for cause of a

disruption," so long as that person's presence and conduct "contribute[s] to that disruption."

United States v. Rivera, 607 F. Supp. 3d at 9.  In order for the government to establish that Mr.
Gunby's conduct on January 6, 2021 "in fact impeded or disrupted the orderly conduct of
Government business or official functions," the government may introduce evidence that Mr.
Gunby's conduct contributed to the actual disruption of government functions, even if he was not
the sole or primary reason for the disruption – and the government may make that argument to
the factfinder.  See United States v. Rhine, 2023 WL 2072450, at *6 (Contreras, J.) (describing
Rivera as holding that "the presence of other sufficient causes of congressional disruption does
not defeat liability under § 1752(a)").

Accordingly, the government "may present evidence of unauthorized individuals'
presence and conduct in or around the Capitol . . . for the limited purpose of demonstrating that
Congress was in fact impeded or disrupted." United States v. Rhine, 2023 WL 2072450, at *7;
see id. ("'[P]lacing [Defendant's] actions in the context of everything else that was going on that
day, and everything else that the Capitol Police were dealing with that day to try to maintain
control of the Capitol' is relevant to the jury's assessment of whether Congress was in fact
disrupted.") (quoting Trial Tr. at 7:14-22, United States v. Vargas-Santos, Crim. No. 21-0047
(D.D.C. Dec. 7, 2022) (Moss, J.)); United States v. Ballenger, Crim. No. 21-0719, 2023
WL 4581846, at *5 (Boasberg, C.J.) ("[T]heir conduct might be innocent enough if they had
acted alone, but that is not what occurred on January 6.").

Although Mr. Gunby is correct that he cannot be punished for offenses committed
by others, the government alleges that he himself committed four misdemeanor offenses on
January 6, 2021.  See Information; see also United States v. Rhine, 2023 WL 2072450, at *6-7
(evidence that other people behaved in a disruptive or disorderly manner does not prove that a
defendant's behavior was disruptive or disorderly unless a factfinder can "reasonably infer a

connection between [the defendant's] conduct and [the others' conduct]").  Mr. Gunby's conduct did not occur in a vacuum, and thus the actions of others may be relevant, and indeed necessary, to the government's case against Mr. Gunby.  The government may introduce evidence about the rest of the crowd, and Court will not circumscribe the government's rhetoric as Mr. Gunby requests.

       For the foregoing reasons, it is hereby ORDERED that Mr. Gunby's Motion <u>In Limine</u> to Preclude the Government's "Raindrop Theory" [Dkt. No. 56] is DENIED.

       SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 8|4|23