UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 21-0626 (PLF) |
| ) | |
| DEREK COOPER GUNBY, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Defendant Derek Cooper Gunby is charged in a four-count information ("Information") based on conduct related to the events at the United States Capitol on January 6, 2021. See Information [Dkt. No. 14]. Pending before the Court are Mr. Gunby's Motion to Dismiss the Information for Failure to State a Claim [Dkt. No. 38] and Motion to Change Venue to [the] District of South Carolina, Greenville Division [Dkt. No. 36]. The Court has carefully considered the parties' written submissions and the applicable authorities.[1] For the following reasons, the Court concludes that the counts in the Information adequately state the offenses for which Mr. Gunby is charged. The Court also concludes that Mr. Gunby has not

---

[1] The Court has reviewed the following documents: Statement of Facts [Dkt. No. 1-1]; Information [Dkt. No. 14]; Motion to Change Venue to [the] District of South Carolina, Greenville Division ("Venue Mot.") [Dkt. No. 36]; Motion to Dismiss the Information for Failure to State a Claim ("Mot. to Dismiss") [Dkt. No. 38]; United States' Opposition to Motion to Dismiss the Information for Failure to State a Claim ("Mot. to Dismiss Opp.") [Dkt. No. 40]; United States' Opposition to Defendant's Motion to Transfer Venue ("Venue Opp.") [Dkt. No. 43]; Reply to the United States' Opposition Regarding Failure to State a Claim (ECF 40) ("Mot. to Dismiss Reply") [Dkt. No. 45]; and Memorandum in Reply to the United States' Opposition to Defendant's Motion to Transfer Venue ("Venue Reply") [Dkt. No. 46]. Because Mr. Gunby's motions did not contain page numbers, citations to his pleadings refer to the electronic case filing page numbers.

established a presumption of prejudice and that voir dire is the appropriate means of assessing potential juror prejudice in this case. The Court therefore will deny both of Mr. Gunby's motions.

## I. BACKGROUND

The events of January 6, 2021 are summarized in the Court's opinion in United States v. Puma. See United States v. Puma, 596 F. Supp. 3d 90, 93-94 (D.D.C. 2022). The factual summary in this section is "for background purposes only," and these facts "do not inform the Court's analysis of [Mr. Gunby's] motion[s] to dismiss, which must be limited to 'the four corners of the [information].'" United States v. Montgomery, 578 F. Supp. 3d 54, 59 n.1 (D.D.C. 2021) (quoting United States v. Safavian, 429 F. Supp. 2d 156, 161 n.2 (D.D.C. 2006)).

The United States alleges that Mr. Gunby was a member of the crowd that entered the Capitol building on January 6, 2021 and engaged in certain activities while there. See Information; see also United States v. Gunby, Crim. No. 21-0626, 2023 WL 4993483, at *1 (D.D.C. Aug. 4, 2023). The Statement of Facts accompanying the criminal complaint describes video footage that depicts Mr. Gunby inside the Capitol building on January 6. See Statement of Facts at 6-8. The video footage shows Mr. Gunby walking inside of the Capitol, holding a cell phone and taking photos on his cell phone. See id. On February 1, 2021, an FBI agent interviewed Mr. Gunby, and Mr. Gunby admitted during the interview that he entered the Capitol building on January 6. See id. at 8. He explained during the interview that no law enforcement or security personnel tried to stop him from going into the Capitol building, and he showed the FBI agent video he had taken that day with his phone. Id. at 8-9. The Statement of Facts also describes a livestream video that Mr. Gunby posted to his Facebook account on January 6, 2021.

Id. at 4. The video appears to depict Mr. Gunby on the Metro after leaving the Capitol. Id. In the video, Mr. Gunby stated:

> [W]e surrounded the Capitol today. Eventually tear gas started flying. They started shooting tear gas. . . . my lips are still burning from it. . . . They detonated, it was like a flash bang . . . . Came a little closer to some nightsticks and rubber bullets than we wanted to. But, this was ultimately peaceful . . . . If the American patriot wanted to storm this Capitol, take over this building, and take care of all of Congress in there, they could do it.

Statement of Facts at 5-6.

On August 10, 2021, Mr. Gunby was arrested in South Carolina. See Executed Arrest Warrant [Dkt. No. 9]. On October 12, 2021, the government charged Mr. Gunby by information with four misdemeanor offenses: Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); Violent Entry and Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). See Information. A jury trial is scheduled to begin on October 2, 2023. See Third Amended Scheduling Order [Dkt. No. 63]; Defendant Gunby's Unopposed Motion and Notice of Election to Be Tried by Jury After Previously Indicating an Intent to Waive Trial by Jury [Dkt. No. 58]. Mr. Gunby moves to dismiss all four counts of the Information and to transfer venue to the District of South Carolina.

## II. DISCUSSION

*A. Motion to Dismiss Information for Failure to State an Offense*

### 1. Legal Standard

A defendant in a criminal case may move to dismiss an indictment or information before trial for "failure to state an offense." FED. R. CRIM. P. 12(b)(3)(B)(v). In determining whether a charging document fails to state an offense, the operative question is "whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed." United States v. Bowdoin, 770 F. Supp. 2d 142, 146 (D.D.C. 2011) (citing United States v. Sampson, 371 U.S. 75, 76 (1962)). In considering a motion to dismiss, a court must accept the allegations in the indictment or information as true. See United States v. Ballestas, 795 F.3d 138, 149 (D.C. Cir. 2015).

An indictment or information "need only contain 'a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" United States v. Ballestas, 795 F.3d at 149 (quoting FED. R. CRIM. P. 7(c)(1)). A charging document "is sufficiently specific where it (1) contains the elements of the offense charged and fairly informs the defendant of those charges so that he may defend against them, and (2) enables him to plead acquittal or conviction in bar of future prosecutions for the same offense.'" United States v. Safavian, 429 F. Supp. 2d 156, 158 (D.D.C. 2006) (quoting Hamling v. United States, 418 U.S. 87, 117-18 (1974)). "In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the [charging document] and, more specifically, the language used to charge the crimes." United States v. Sunia, 643 F. Supp. 2d 51, 60 (D.D.C. 2009). The Court's analysis of Mr. Gunby's motion to dismiss "must be limited to 'the four

4

corners of the [information].'" United States v. Montgomery, 578 F. Supp. 3d at 59 n.1 (quoting United States v. Safavian, 429 F. Supp. 2d at161 n.2).

### 2. Analysis

Mr. Gunby asks the Court to dismiss each count in the Information because "the Statement of Facts on file simply do not lay out facts which enunciate sufficient probable cause to charge Gunby with the crimes listed." Mot. to Dismiss at 2. He suggests that "nothing in the Statement of Facts purports to refute Gunby's alleged statement that Gunby entered the Capitol unrestricted on January 6." Id. at 3. He further states that "[c]riminal charges require more than mere presence." Id. at 4; see Mot. to Dismiss Reply at 2-3 ("Gunby's alleged acts of 'entering the Capitol, . . . walking down a hallway, and after a few minutes, turn[ing] around and exit[ing] through the same door' does not constitute any crime.").

Mr. Gunby's argument "fundamentally misperceives the nature of a motion to dismiss an [information]." United States v. Ballestas, 795 F.3d at 148. In determining whether the Information adequately states an offense, the Court may not consider the Statement of Facts; the Court's analysis "must be limited to 'the four corners'" of the charging document. United States v. Montgomery, 578 F. Supp. 3d at 59 n.1 (quoting United States v. Safavian, 429 F. Supp. 2d at 161 n.2). For the most part, Mr. Gunby does not contend that the Information omits necessary elements or provides insufficient notice of the charged offenses – rather, he takes issue with the sufficiency of the government's account of his conduct as laid out in the Statement of Facts. See Mot. to Dismiss Reply at 4.

For example, Mr. Gunby argues that "[t]he crime of disorderly conduct requires an allegation that Gunby conducted himself in a disorderly manner." Mot. to Dismiss Reply at 3. In support of his argument that the Information does not contain this allegation, however, he

5

questions whether the description contained in the Statement of Facts constitutes disorderly conduct. See id. ("The act of 'walking down a hallway, and after a few minutes, [turning] around and exit[ing] through the same door' is not disorderly conduct."). The Information, however, in fact alleges that Mr. Gunby "engaged in disorderly and disruptive conduct" in Counts Two and Three. Information at 3. The narrative contained in the Statement of Facts – and Mr. Gunby's assertions that he cannot be prosecuted for others' behavior – are irrelevant to the legal sufficiency of the Information. See United States v. Mosquera-Murillo, 153 F. Supp. 3d 130, 154 (D.D.C. 2015) ("[A] pretrial motion to dismiss an indictment allows a district court to review the sufficiency of the government's pleadings, but it is not a permissible vehicle for addressing the sufficiency of the government's evidence." (internal quotations and citation omitted)); United States v. Young-Bey, Crim. No. 21-0661, 2023 WL 3303819, at *5 (D.D.C. May 8, 2023) ("[I]nformation about . . . what [the government's] evidence will be at trial is not relevant to the current inquiry."); United States v. McHugh, Crim. No. 21-0453, 2023 WL 2384444, at *3 (D.D.C. Mar. 6, 2023) ("There is no requirement that the indictment make out the government's case or provide any details as to the logistics of the alleged offense.").

Although Mr. Gunby primarily challenges the allegations in the Statement of Facts, he comes closest to challenging the legal sufficiency of the Information when discussing Count One, Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1). He argues that "[t]he crime of illegally entering and remaining in an unauthorized building" requires proof that Mr. Gunby knew that he was not authorized to be in the building. Mot. to Dismiss Reply at 3. He asserts that "the information does not allege such knowledge on the part of Gunby." Id.; see id. at 4 ("The Statement of Facts says only that Gunby entered the Capitol, with no mention of whether he knew he was unauthorized."). Mr.

6

Gunby is incorrect. The Information specifically states that Mr. Gunby "did unlawfully and knowingly enter and remain in a restricted building and grounds." Information at 1 (emphasis added). At this stage, the Court must assume the truth of the allegation that Mr. Gunby "knowingly enter[ed] and remain[ed]" as stated in the Information. See United States v. Ballestas, 795 F.3d at 149. This "plain, concise" recitation of the offense's elements is sufficient to withstand Mr. Gunby's motion to dismiss. See FED. R. CRIM. P. 7(c)(1); Hamling v. United States, 418 U.S. at 117.

For each of the charged offenses, the Information alleges the necessary elements, "echoes the operative statutory text," and "specif[ies] the time and place of the offense." United States v. Williamson, 903 F.3d 124, 130 (D.C. Cir. 2018); see Information at 1-3; Mot. to Dismiss Reply at 4 (conceding that "the information simply recites the elements of Count 1, Count 2, and Count 3"). If the allegations contained in the Information – not the Statement of Facts – are proven, that "would be sufficient to permit a jury to find that the crimes charged were committed." United States v. Bowdoin, 770 F. Supp. 2d at 146. Accordingly, the Court concludes that the Information comports with constitutional requirements and the Federal Rules of Criminal Procedure. Mr. Gunby's motion to dismiss for failure to state an offense is denied.

Mr. Gunby requests that, if the Court denies his motion to dismiss for failure to state an offense, the Court hold a preliminary hearing to determine if probable cause exists for any of the offenses alleged. See Mot. to Dismiss at 1. Mr. Gunby is not entitled to a preliminary hearing. Rule 5.1 of the Federal Rules of Criminal Procedure explains that a person "charged with an offense other than a petty offense" is entitled to a preliminary hearing unless "the government files an information charging the defendant with a misdemeanor." FED. R. CRIM. P. 5.1(a)(4). The government has filed an information in this case charging Mr. Gunby with several

misdemeanors. See Information. And, as the government observes, Magistrate Judge G. Michael Harvey has already determined that the complaint established probable cause to believe that the charged offenses have been committed. Mot. to Dismiss Opp. at 7; see Complaint [Dkt. No. 1]. Mr. Gunby's request for a preliminary hearing is denied.

### B. Motion to Transfer Venue

#### 1. Legal Standard

In general, criminal trials are held in the state where the offense was committed. See U.S. Const. art. III, § 2 ("The Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed."); FED. R. CRIM. P. 18 ("[T]he government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice."). As a "basic requirement of due process," a criminal defendant has the right to a "fair trial in a fair tribunal," Irvin v. Dowd, 366 U.S. 717, 722 (1961), as well as a Sixth Amendment right to a trial "by an impartial jury of the State and district wherein the crime [was allegedly] committed." U.S. Const. amend. VI. Thus, pursuant to Rule 21(a) of the Federal Rules of Criminal Procedure, a court "must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." FED. R. CRIM. P. 21(a).

In Skilling v. United States, the Supreme Court recognized that "if extraordinary local prejudice will prevent a fair trial," it may be necessary to transfer a proceeding "to a different district at the defendant's request." Skilling v. United States, 561 U.S. 358, 378 (2010). The Supreme Court set forth a list of three non-exhaustive factors to consider in determining

whether prejudice exists: (1) "the size and characteristics of the community in which the crime occurred"; (2) whether media coverage of the crime "contained [a] confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight"; and (3) whether the time between the crime and the trial has "diminished" the "level of media attention." Id. at 382-83. The Supreme Court also cautioned that a "presumption of prejudice . . . attends only the extreme case" and that "[p]rominence does not necessarily produce prejudice, and juror impartiality . . . does not require ignorance." Id. at 381.

The D.C. Circuit has stated that it is "well established procedure" for a court to decline to transfer venue except in "extreme circumstances." United States v. Haldeman, 559 F.2d 31, 60, 64 (D.C. Cir. 1976) (en banc) (per curiam). Instead, voir dire is the preferred means of excluding prejudiced jurors. See id. at 62 (counseling against a "pre-voir dire conclusion" that "a fair jury cannot be selected"). "[I]f an impartial jury actually cannot be selected, that fact should become evident at the voir dire." Id. at 63.

2. Analysis Under Skilling v. United States

Mr. Gunby argues that the venire of District of Columbia residents is "so greatly prejudiced against him that Mr. Gunby cannot obtain a fair and impartial trial in Washington, D.C." Venue Mot. at 7. Considering the factors enumerated in Skilling v. United States as they pertain to this case, the Court disagrees.

a. Size and Makeup of D.C. Juror Pool

The first Skilling factor requires the Court to assess "the size and characteristics of the community in which the crime occurred" to determine whether there is potential prejudice. Skilling v. United States, 561 U.S. at 382. Mr. Gunby argues that Washington, D.C. is a "small

and highly insular political community," whose residents overwhelmingly vote for Democrats and are "political averse to Donald Trump supporters." Venue Mot. at 8. The government suggests that "[h]igh-profile individuals strongly associated with a political party" – including John Poindexter, Oliver North, Roger Stone, Scooter Libby, and Steve Bannon, to name a few – have all been fairly tried in this district without incident, despite the voting habits of D.C. residents. Venue Opp. at 6-7. The Court agrees with the government.

Judge Bates considered similar arguments in United States v. Nassif. As Judge Bates explained, "courts have rejected the presumption of prejudice when confronted with similarly sized – and indeed smaller – populations" as the population of the District of Columbia. United States v. Nassif, 628 F. Supp. 3d 169, 186 (D.D.C. 2022) (citing Skilling v. United States, 561 U.S. at 382) (noting that there is a "reduced likelihood of prejudice where the venire was drawn from a pool of over 600,000 individuals"); see United States v. Taylor, 942 F.3d 205, 223 (4th Cir. 2019) (affirming denial of venue transfer motion where local population "was approximately 621,000 residents"). In addition, as Judge Jackson has explained, this court's "master list of available jurors is large enough to include individuals who have paid little or no attention to the January 6 cases. It includes several hundred thousand District residents who may not be involved in policy or politics or the operation of the federal government at all [and] who travel to and from work or school without coming near the Capitol." United States v. Garcia, Crim. No. 21-0129, 2022 WL 2904352, at *8 (D.D.C. July 22, 2022). And, as Judge Chutkan explained with respect to the political leanings of potential D.C. jurors, such leanings "are not, by themselves, evidence that those jurors cannot fairly and impartially consider the evidence presented." Order, United States v. Alford, Crim. No. 21-0263 (D.D.C. Apr. 18, 2022) [Dkt. No. 46] at 6 (denying defendant's request to transfer venue but granting request for expanded

examination of prospective jurors); see United States v. Haldeman, 559 F.2d at 64 n.43. Notwithstanding the fact that some District of Columbia residents are employed by the federal government or were affected by the events at the Capitol on January 6, 2021, see Venue Mot. at 8-10, the size and makeup of the D.C. juror pool does not create a presumption of prejudice or partiality. See Skilling v. United States, 561 U.S. at 379; see also United States v. GossJankowski, Crim. No. 21-0123, 2023 WL 395985, at *5-6 (D.D.C. Jan. 25, 2023).

### b. Media Coverage

The second Skilling factor is whether media coverage of the defendant's conduct at issue "contained [a] confession or other blatantly prejudicial information of the type readers or viewers could not reasonably be expected to shut from sight." Skilling v. United States, 561 U.S. at 382. Mr. Gunby argues that the "relentless media coverage of political statements made about the Capitol defendants" combined with "the already small and politically homogenous community" of Washington, D.C. precludes Mr. Gunby from empaneling a fair jury. Venue Mot. at 11-12. The Court disagrees. "The mere existence of intense pretrial publicity is not enough to make a trial unfair, nor is the fact that potential jurors have been exposed to this publicity." United States v. Childress, 58 F.3d 693, 706 (D.C. Cir. 1995). Jurors need not be "totally ignorant of the facts and issues involved" in a case; rather, "[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irvin v. Dowd, 366 U.S. at 722-23. Even if media coverage is "pervasive and concentrated," pretrial publicity "cannot be regarded as leading automatically and in every kind of criminal case to an unfair trial." Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 565 (1976). In addition, "[w]hen publicity is about [an] event, rather than directed at the individual defendants,

11

this may lessen any prejudicial impact." Skilling v. United States, 561 U.S. at 384 n.17 (citation omitted); see also United States v. GossJankowski, 2023 WL 395985, at *6.

The second Skilling factor therefore does not support a transfer of venue in this case. Mr. Gunby has not suggested that he has been named or featured in any news stories that D.C. residents would have come across. By contrast, in Rideau v. Louisiana, the pretrial publicity that led the Supreme Court to determine that there was prejudice against the defendant involved a recording of the defendant's interrogation and confession, which was broadcast in a small town prior to trial. See Rideau v. Louisiana, 373 U.S. 723, 724 (1963). Mr. Gunby's case is very different. It is likely that "not a single member of the venire will ever have heard of [Mr. Gunby], much less have formed an opinion of his guilt." United States v. Nassif, 628 F. Supp. 3d at 187.

c. Time Between January 6 and Trial

The third Skilling factor is whether the time between the date the offense was committed and the date of trial has "diminished" the "level of media attention." Skilling v. United States, 561 U.S. at 383. Skilling suggests that potential prejudice may arise where "trial swiftly follow[s] a widely reported crime." Id. Although Mr. Gunby is correct that the events at the Capitol on January 6, 2021 were widely documented, more than two and a half years will have elapsed between January 6 and Mr. Gunby's trial, which is scheduled to begin on October 2, 2023. See Second Amended Scheduling Order [Dkt. No. 53]. While media coverage of January 6 has continued, "it no longer dominate[s] the news and ha[s] become less intense than it was in the immediate aftermath of the riot." United States v. Garcia, 2022 WL 2904352, at *9 (citing In re Tsarnaev, 780 F.3d 14, 22 (1st Cir. 2015) ("The nearly two years that have passed since the [Boston] Marathon bombings has allowed the decibel level of publicity about

12

the crimes themselves to drop and community passions to diminish.")). There is also no indication that Mr. Gunby's case in particular has been heavily featured in the news. The Court therefore concludes that the current media coverage "is not of the type or tenor requiring a transfer of venue." United States v. Nassif, 628 F. Supp. 3d at 188; see United States v. GossJankowski, 2023 WL 395985, at *6.

### 3. Appropriateness of Voir Dire to Assess Potential Prejudice

As many judges of this Court have previously noted, voir dire is the appropriate means of assessing potential juror prejudice, and many juries have been successfully empaneled in January 6 cases to date. See, e.g., United States v. Garcia, 2022 WL 2904352, at *6; United States v. GossJankowski, 2023 WL 395985, at *1 (collecting cases).

Mr. Gunby argues that transfer of venue is appropriate because voir dire is an insufficient method for eliminating prejudice among prospective jurors. Venue Mot. at 14-16. His observations about juries that have been empaneled in January 6 cases thus far, however, undermine his argument. He explains that some prospective jurors in January 6 cases have spoken passionately about their feelings relating to the attack on the Capitol during voir dire. Venue Reply at 3-5. If potential jurors were to do the same in this case, Mr. Gunby would be able to strike them from the jury panel either peremptorily or for cause. It is precisely because experience shows that prospective jurors under oath during voir dire honestly and candidly answer questions about their potential bias that the Court is confident that it will be able to empanel a fair jury in this matter. Accordingly, there is no reason to transfer this case from the District of Columbia to another jurisdiction without first attempting to voir dire potential jurors.

For the foregoing reasons, it is hereby ORDERED that Mr. Gunby's Motion to Dismiss the Information for Failure to State a Claim [Dkt. No. 38] and Motion to Change Venue to District of South Carolina, Greenville Division [Dkt. No. 36] are DENIED.

SO ORDERED.

/s/ Paul L. Friedman
PAUL L. FRIEDMAN
United States District Judge

DATE: 8/29/23