## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:21-cr-626 (PLF)** |
| | : | |
| **DEREK COOPER GUNBY,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S TRIAL BRIEF

The United States, by and through its attorneys, respectfully submits this brief summarizing the government's evidence at trial and legal issues that may be brought before the Court. As described below, the government's evidence will include videos, testimony from law enforcement witnesses, and admissions made by the defendant in the form of social media messages and posts, and other communications. In an effort to streamline its presentation for trial and focus on the matters in dispute, the parties have agreed in principle to certain stipulations. The parties have also reached agreement on the admission of some exhibits. Based on these stipulations and agreements, the government expects its case-in-chief to last approximately three to four trial days.

## I.    THE JANUARY 6 CAPITOL RIOT AND THE DEFENDANT'S ACTIONS

Derek Gunby believed that fraud occurred during the 2020 presidential election and that the election was stolen.  Gunby held this belief so fervently that he left the Stop the Steal rally on the Ellipse and joined the mob that stormed the Capitol in order to obstruct the certification of the Electoral College vote count.  Gunby believed that patriots could not "depend[ ] on Mike Pence to do the right thing in certifying this vote" and needed to take matters into their own hands. Gunby joined a raucous and violent mob that overran the police and breached the U.S. Capitol building. He did so knowing that his actions were illegal. Gunby stayed on restricted Capitol grounds for

over two hours. He watched and recorded some of the worst violence that took place on January 6. Notwithstanding these and other indicia that he was not permitted to be there, Gunby remained on Capitol grounds in order to do his part to "stop the steal" if lawmakers would not do so.

### A.  Gunby's Preparation for January 6

On or about January 5, 2021, Gunby drove to Washington D.C. from his residence in Anderson, South Carolina. Gunby planned to attend the "Stop the Steal" rally on January 6, 2021. Gunby expected violence in D.C.  In fact, the night before the rally Gunby posted to Facebook two photos of brick piles on the streets of D.C. captioned, "🚨Head's up to Patriots in D.C.🚨 They've already started dumping bricks. For 'construction purposes' yea sure… Be safe, watch your back." Gunby commented on the images, "Cops in leftist controlled areas of the US seem to assist with this type of thing for leftist terrorism.  We're ready. We know you, we know what you are and what you bring to play with.  We're also smarter and are willing to die for our beliefs whereas you are not."

### B.  Gunby's Actions on January 6

On January 6, 2021, at approximately 6:49 a.m., Gunby posted a photo of himself (in fatigues) and another individual traveling on the Metro, with the caption, "Up at Zero Dark Thirty to stop this steal." Gunby later attended the Stop the Steal rally at the Ellipse, and he posted multiple photos of the event to Facebook. After the rally, Gunby headed towards the Capitol. On his way to the Capitol, at 1:53 p.m., Gunby took a photo of gallows, which included a bright orange noose, that had been erected near Capitol grounds. The gallows had messages written on it, including "Fuck Mitch" and "Fuck Pelosi."

Gunby entered restricted Capitol grounds on the West side of the Capitol at around 2:15 p.m.  A photo taken by Gunby as he approached the Northwest stairs showed rioters atop various

structures, including scaling the Capitol's retaining wall. Over the stairs was scaffolding erected to support construction for the Presidential Inauguration.

Gunby recorded videos as he advanced toward the Capitol building. Gunby's own video, recorded as he approached the Northwest stairs, shows the protective tarp covering the scaffolding in tatters from rioters who had ripped, slashed, and cut the tarp while advancing closer to the Capitol Building. As Gunby approached the Northwest stairs he narrated, "I think that the building's been breached, but I'm not sure. We're trying to head up and get in there.  The scaffolding up there is just crawling with people and these steps, they've already made it up all the way up the stairs.  And tear gas has been deployed over here."

As Gunby made his way up the Northwest stairs, he continued to narrate the scene, "We're on the Capitol steps… people are climbing the scaffolding and we are trying to storm the Capitol Building. We're taking the country back.  You don't get to do this to my country and not suffer the consequences."

Gunby then made his way into the Northwest Courtyard where he joined the crowd of rioters pushing their way into the Capitol Building through the Senate Parliamentarian Door. Gunby again recorded himself. Gunby's video showed the damage done to windows near the Parliamentarian Door, which were bashed and broken.  A shrill alarm can be heard blaring loudly from inside the building.  As he moved closer and closer towards the building's entrance, Gunby explained, "We've got some breaches in the Capitol Building… in which I'm about to go, because enough is enough.  We've sat back, we've been nice.  We sat there and watched Black Lives Matter and Antifa burn our cities down this year.  And we're depending on Mike Pence to do the right thing in certifying this vote?   No."  Gunby's video also captures Gunby yelling with the crowd, "Push forward!" as they pushed inside the building.

At around 2:58 p.m., Gunby entered the Capitol Building through the Senate Parliamentarian Door. Gunby recorded video as he moved past an office and attempted to go deeper into the building. However, officers further down the hallway joined forces to start forcing the mob of rioters out of the building, including shooting pepper balls at rioters. At approximately 3:01 p.m., officers pushed Gunby and the rest of the rioters back out the Senate Parliamentarian Door. Immediately after his expulsion from the building, at approximately 3:01 p.m., Gunby recorded another video while standing next to the steps leading to the Parliamentarian Door. Gunby explained that he "just got a dose of tear gas" and that officers "were firing rubber bullets."

However, this violent encounter with officers did not deter Gunby. Gunby remained on Capitol grounds. He moved from the Northwest Courtyard to the Upper West Terrace.

Police officers in riot gear were amassing on the Upper West Terrace as Gunby arrived. Gunby stayed on the Upper West Terrace close to the balcony. As shown in Gunby's videos, from his vantage point, Gunby could see the chaos and violence on the Lower West Terrace just below him. At approximately 3:15 p.m., Gunby posted a photo to Facebook showing the crowd of rioters amassed on the Lower West Terrace and in the West Plaza. Minutes later, Gunby recorded the crowd shoving two police officers who were pulled out of the Tunnel. Gunby described the scene: "They've taken a shield from… a Metro policeman… he's kinda, looks terrified…" Rioters began chanting "Police stand down," and Gunby joined the chant.

Still not deterred by the violence he witnessed, Gunby made his way to the Lower West Terrace and found a front row seat to the violence taking place inside the Tunnel. At approximately 4:28 p.m., Gunby recorded officers desperately trying to get rioters to disperse, noting that officers were "shooting something… shooting mace" at rioters. At approximately 4:32 p.m., Gunby took a photo of an officer pointing a riot-control weapon directly at the crowd.

4

### C.  Gunby's Statements and Actions after January 6

Shortly after the riot, Gunby recorded a Facebook Live video while on the Metro back to his hotel.  During that Facebook video, Gunby spoke for almost ten minutes about the riot and why he believed it occurred. Gunby explained,

> We all pretty much surrounded the Capitol. We are at a point now in this country where they are going to listen to us, they have to listen to us.  Your Congressional leaders are not afraid of you.  They are more afraid of the Chinese Communist party.  They are more afraid of left-wing media.  And they are more afraid of Antifa and Black Lives Matter than they are of the American patriot, the American conservative, the American libertarian, the person that's on the right side of the Constitution.  And let me tell you about the Constitution.  A lot of people have a fundamental misunderstanding of what fidelity to the Constitution actually looks like, what the Constitution actually says, what your role is as someone who takes an oath to the Constitution, whether you're a police office, a Congressperson, senator, president, any type of public servant that takes an oath to the Constitution.  You need to understand the gravity of that oath and what it means.

Later in the same video, Gunby admitted,

> Came a little closer to some nightsticks and rubber bullets than we wanted to. But, this was ultimately peaceful. I do believe that the Metro police here in Washington do understand the stark difference between Trump supporters, the patriots, what have you, than say ANTIFA, Black Lives Matter. The character is completely different. There couldn't be more of a stark difference in justification, and intent, and capability. If the American patriot wanted to storm this Capitol, take over this building, and take care of all of Congress in there, they could do it. They could do it…

> They just tried to steal this election right in front of everybody's face. And any of you, any of you, who are gonna sit there and look anybody in the face, and say that that didn't happen, that this election fraud didn't happen, that we're making it up, that it's unsubstantiated, you need to wake up.

In the weeks and months after the riot, Gunby also posted multiple Telegram messages confirming that he believed that the 2020 election had been stolen, and that those who took an oath to defend the Constitution were obligated to refuse to accept the Biden presidency.  For instance, Gunby sent the following message on Telegram:



Gunby's Facebook messages after the riot also confirmed his belief that the 2020 presidential election had been stolen, and that he believed he did nothing wrong at the Capitol on January 6.

In these communications, Gunby reinforced that his actions at the Capitol were to block the peaceful transfer of presidential power after the 2020 election.  Gunby's statements provide further evidence that he sought to delay or stop (i.e., obstruct) the certification because he believed the 2020 election was fraudulent and the incoming presidency was unconstitutional.

## II.    THE GOVERNMENT'S PROOF

### A.  Trial Stipulations

In effort to streamline the trial, the government and defendant have discussed various stipulations. The government believes agreement has been reached (or will likely be reached) on the following stipulations: (1) the authenticity of the examination report and items recovered from Gunby's cellular telephone and Telegram, Facebook, and Instagram accounts. The parties have also agreed that certain exhibits are admissible. Specifically, both parties agree that, at a minimum,

evidence that is from the time Gunby was on Capitol Grounds is likely admissible. The parties dispute certain evidence that precedes Gunby's presence at the Capitol.

The list of witnesses below reflects the assumption that the parties will finalize the stipulations to which they have agreed in principle.

### B.  Live Testimony

#### 1.  Captain Tia Summers (U.S. Capitol Police)

Captain Summers will testify as an overview witness regarding January 6, 2021. Her testimony, and the exhibits accompanying her testimony, address the timeline of January 6, 2021; the perimeter of the restricted grounds and the barriers, such as bike racks, snow fencing, and "Area Closed" signs; the fact that the Capitol was closed on January 6; the security procedures normally in place for visitors to the Capitol; the layout of certain parts of the Capitol; and the threat caused by unauthorized individuals in the building.

#### 2.  USCP Officer Mark Gazelle (U.S. Capitol Police)

Officer Gazelle served as one of the officers protecting members of the United States Senate on January 6, 2021. Officer Gazelle will testify regarding Congress's certification of the Electoral College vote, including an explanation of the provisions governing the certification proceeding. Officer Gazelle will also testify about the certification proceeding as it occurred on January 6 and 7, 2021. His testimony, and the exhibits accompanying that testimony (including a video montage of the Joint Session), provides the evidence to establish that the certification was an official proceeding and that it was obstructed by the riot on January 6. Officer Gazelle will also provide the details of the timing of the Joint Session, its interruption, and its resumption.

### 3.   Special Agent Elizabeth Glavey (U.S. Secret Service)

Special Agent Glavey will provide testimony relevant to proving key elements of at least two of the charged offenses. Counts One and Two, which charge violations of 18 U.S.C. §§ 1752(a)(1) and 1752(a)(2), require proof that the defendant entered or remained within a "restricted building or grounds." A building or grounds may be restricted, under this statute, if a USSS protectee is temporarily visiting. 18 U.S.C. § 1752(c)(1)(B). Here, then-Vice President Pence was visiting the U.S. Capitol in his capacity as President of the Senate for the proceedings relating to the certification of the Electoral College vote. Special Agent Glavey's testimony proves that Vice President Pence and his wife and daughter, all Secret Service protectees, were temporarily visiting the U.S. Capitol on January 6, 2021. Her testimony establishes that the Vice President presided over the entirety of the certification, and he remained at the U.S. Capitol during the riot. Special Agent Glavey will also testify that the certification stopped because of rioters at the Capitol.

### 4.   Metro Transit Police Officer Eric Wright (Washington Metropolitan Area Transit Authority)

Officer Wright helped to clear rioters from the Capitol Building.  Specifically, he was part of a group of officers who helped to clear the breach of the Senate Parliamentarian Door, forcing out a large crowd of rioters, including Gunby, at around 3 p.m., using various means, including by shooting pepper balls into the mob.  Officer Wright will testify primarily about what he witnessed in and around the Senate Parliamentarian Door. He will also introduce video of the area.

### 5.   Sergeant William Bogner (Metropolitan Police Department)

Sergeant Bogner defended the Capitol Building on the Lower West Terrace, one of the most violent fronts on January 6. Specifically, Sergeant Bogner helped to defend the Tunnel at the Lower West Terrace from around 3:00pm to 4:30pm.  He will testify regarding the measures that

officers took to keep rioters from breaching the Capitol at the Tunnel and some of the drastic violence and assaults against officers that occurred at the Tunnel, including assaults that Gunby recorded from higher up locations (on the Upper West Terrace and while standing on stairs between the Upper West Terrace and the Lower West Terrace). He will also introduce video of the area, including video recorded by Gunby.

### 6.  Task Force Officer John Dyas (FBI)

Task Force Officer Dyas is one of the case agents assigned to Gunby's case. He is expected to testify regarding evidence from the defendant's cell phone, Telegram, Facebook, and Instagram accounts, which is relevant to topics including the defendant's intent to obstruct the proceeding, consciousness of wrongdoing, knowledge of the official proceeding, and presence at the Capitol. Task Force Officer Dyas will also identify the defendant in certain videos taken at the Capitol on January 6 and will introduce evidence regarding items recovered from the defendant's residence.

### C.  Elements of the Crimes Alleged

The Indictment charges five offenses. The offenses are as follows[1]:

---

[1] Unless otherwise noted, the elements here reflect the proposed jury instructions.

**COUNT ONE:**

**OBSTRUCTION OF AN OFFICIAL PROCEEDING**[2]

(18 U.S.C. § 1512(c)(2))

Count One of the Indictment charges the defendant with corruptly obstructing an official proceeding, which is a violation of federal law.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

**First**, the defendant attempted to or did obstruct or impede an official proceeding.

**Second**, the defendant intended to obstruct or impede the official proceeding.

**Third**, the defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding.

**Fourth**, the defendant acted corruptly.

---

[2] 18 U.S.C. § 1512(c)(2). For other January 6 trials that have used similar instructions to these, see, *e.g.*, *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 28); *United States v. Fellows*, 21-cr-83 (TNM) (ECF No. 140 at 23-27); *United States v. Stedman*, 21-cr-383 (BAH) (ECF No. 69 at 5-8); *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 8); *United States v. Carpenter*, 21-cr-305-JEB (ECF No. 97 at 10); *United States v. Robertson*, 21-cr-34 (CRC) (ECF No. 86 at 11-12); *United States v. Reffitt*, 21-cr-32 (DLF) (ECF No. 119 at 25); *United States v. Williams*, 21-cr-377 (BAH) (ECF No. 112 at 7); *United States v. Hale-Cusanelli*, 21-cr-37 (TNM) (ECF No. 84 at 24); and *United States v. Bledsoe*, 21-cr-204 (BAH) (ECF No. 215 at 7).

## COUNT TWO:

## ENTERING OR REMAINING IN A RESTRICTED BUILDING OR GROUNDS[3]

### (18 U.S.C. § 1752(a)(1))

Count Two of the Indictment charges the defendant with entering or remaining in a restricted building or grounds, which is a violation of federal law.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

**First**, the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

**Second**, the defendant did so knowingly.

## COUNT THREE:

## DISORDERLY OR DISRUPTIVE CONDUCT IN A RESTRICTED BUILDING [4]

### (18 U.S.C. § 1752(a)(2))

Count Three of the Indictment charges the defendant with disorderly or disruptive conduct in a restricted building or grounds, which is a violation of federal law.

---

[3] 18 U.S.C. §§ 1752, 3056; *United States v. Jabr*, 4 F.4th 97, 101 (D.C. Cir. 2021).  For January 6 cases using similar instructions, see *United States v. Eicher*, 22-cr-38 (BAH) (ECF No. 82 at 6); *United States v. Lesperance, et al.*, 21-cr-575 (JDB) (ECF No. 96 at 26); *United States v. Chwiesiuk, et al.*, 21-cr-536 (ACR) (ECF No. 103 at 8-9); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 30).
[4] 18 U.S.C. § 1752. For January 6 cases using similar instructions, see *United States v. Eicher*, 22-cr-38 (BAH) (ECF No. 82 at 6-7); *United States v. Lesperance, et al.*, 21-cr-575 (JDB) (ECF No. 96 at 27); *United States v. Chwiesiuk, et al.*, 21-cr-536 (ACR) (ECF No. 103 at 9); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 32).

<u>Elements</u>

In order to find the defendant guilty of this offense, you must find that the government proved **each** of the following elements beyond a reasonable doubt:

**<u>First</u>**, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

**<u>Second</u>**, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

**<u>Third</u>**, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

## COUNT FOUR:

## <u>DISORDERLY CONDUCT IN A CAPITOL BUILDING[5]</u>

40 U.S.C. § 5104(e)(2)(D)

Count Four of the Indictment charges the defendant with disorderly and disruptive conduct in a Capitol Building or within Capitol Grounds, which is a violation of federal law.

<u>Elements</u>

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

**<u>First</u>**, the defendant engaged in disorderly or disruptive conduct in any of the United States Capitol Buildings or Grounds.

---

[5] *United States v. Barnett*, 21-cr-38 (CRC) (ECF No. 158 at 22); *United States v. Jenkins*, 21-cr-245 (APM) (ECF No. 78 at 31); *United States v. Jensen*, 21-cr-6 (TJK) (ECF No. 97 at 40); *United States v. Williams*, 21-cr-618 (ABJ) (ECF 122 at 40); *United States v. Eicher*, 22-cr-38 (BAH) (ECF No. 82 at 6); *United States v. Lesperance, et al.*, 21-cr-575 (JDB) (ECF No. 96 at 28); *United States v. Chwiesiuk, et al.*, 21-cr-536 (ACR) (ECF No. 103 at 10-11).

**Second**, the defendant did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

Third, the defendant acted willfully and knowingly.

## COUNT FIVE:

## PARADING, DEMONSTRATING, OR PICKETING IN A CAPITOL BUILDING[6]

40 U.S.C. § 5104(e)(2)(G)

Count Five of the Indictment charges the defendant with parading, demonstrating, or picketing in a Capitol Building, which is a violation of federal law.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

**First**, the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.

**Second**, the defendant acted willfully and knowingly.

## III.    STATEMENT OF THE CASE

### A.  The Parties' Evidence and Anticipated Defenses

The parties are committed to trying the case expeditiously and without lengthy arguments about objections. The parties have reached agreement in principle as to the admissibility of certain exhibits and the authenticity (if not admissibility) of others. Defendant has disclosed at least some

---

[6] *United States v. Barnett*, 21-cr-38 (CRC) (ECF No. 158 at 23); *United States v. Jensen*, 21-cr-6 (TJK) (ECF No. 97 at 42); *United States v. Williams*, 21-cr-618 (ABJ) (ECF 122 at 40); *United States v. Eicher*, 22-cr-38 (BAH) (ECF No. 82 at 7); *United States v. Lesperance, et al.*, 21-cr-575 (JDB) (ECF No. 96 at 29); *United States v. Chwiesiuk, et al.*, 21-cr-536 (ACR) (ECF No. 103 at 11).

exhibits and witnesses to the government. The government may object to the defendant's introduction of certain exhibits.

On October 20, 2023, the parties conferred regarding the proposed exhibit lists to discuss admissibility and objections. In general, the defense objected to any government exhibits that either pre or post-date Gunby's presence within the restricted grounds. For example, the defense intends to object to Capitol CCV footage from before Gunby's arrival on Capitol Grounds on relevance grounds. Similarly, the defense raised an objection to government's exhibit 301, a photograph from Gunby's phone of a gallows constructed on the National Mall.

The defense exhibit list was provided to the government on October 16, 2023. The list contains 48 marked exhibits, the content of which is unclear from the titles ascribed. During the meet and confer, the government made an objection to any exhibit that does not pertain to Gunby's personal experience at the Capitol on January 6, 2021, or would have had an impact on his mental state that day. The defense has produced no discovery to the government, so, without a more detailed explanation of their proposed exhibits, the government cannot state specific objections to any individual exhibit.

The government anticipates that the defense will focus on the defendant's actions and his *mens rea* in committing the charged offenses. The government's evidence of Gunby's actions on January 6, together with evidence of Gunby's statements describing those actions, will establish that Gunby joined the mob to accomplish the goal of obstructing the certification. Gunby fully understood his role in the collective effort to overrun police and forcibly occupy the Capitol, which accomplished the rioter's objective in obstructing the certification of the electoral vote count.

### B.  List of Government Witnesses

1.  USCP Captain Tia Summers
2.  USCP Officer Mark Gazelle
3.  USSS Special Agent Elizabeth Glavey
4.  FBI TFO John Dyas
5.  WMATA Metro Transit Police Officer Eric Wright
6.  MPD Sergeant William Bogner

### C.   List of Prior Convictions

The Government is not currently aware of any prior convictions for Defendant Gunby.

### D.  Use of Inadmissible Hearsay

A defendant's own out-of-court statements are hearsay that cannot be admitted to prove the truth of any matter asserted. Fed. R. Evid. 801, 802. The government can offer the defendant's statements as statements of a party opponent, Fed. R. Evid. 801(d)(2)(A), or other non-hearsay or hearsay execution, but the defendant has no corresponding right to admit his own statements without subjecting himself to cross-examination.

#### 1.  The Rule of Completeness cannot circumvent the rule against hearsay

Nor does Federal Rule of Evidence 106, the "Rule of Completeness," provide an end-run around the prohibition against hearsay. That rule provides that, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part--or any other writing or recorded statement--that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Rule 106 directs the Court to "permit such *limited portions* [of a statement] to be contemporaneously introduced as will remove the distortion that otherwise would accompany the prosecution's evidence." *United States v. Sutton*, 801 F.2d 1346, 1369 (D.C. Cir. 1986) (emphasis added). The rule does not "empower[] a court to admit *unrelated* hearsay." *United States v. Woolbright*, 831 F.2d 1390, 1395 (8th Cir. 1987) (emphasis added). "The provision of Rule 106 grounding admission on 'fairness' reasonably should be interpreted

to incorporate the common-law requirements that the evidence be relevant, and be necessary to qualify or explain the already introduced evidence allegedly taken out of context . . . In almost all cases we think Rule 106 will be invoked rarely and for a limited purpose." *Sutton*, 801 F.2d at 1369.

In this case, many of the defendant's statements to be offered by the government were made in chat groups, or using social media accounts, that were active over extended periods of time. Rule 106 does not make all statements within these groups and accounts admissible over a hearsay objection, but only those narrow portions that are necessary to "correct a misleading impression." *Sutton*, 801 F.2d at 1368 (quoting Advisory Committee note to Rule 106). By way of analogy, Courts of Appeals have rejected the notion that "all documents contained in agglomerated files must be admitted into evidence merely because they happen to be physically stored in the same file." *Jamison v. Collins*, 291 F.3d 380, 387 (6th Cir. 2002), as amended on denial of reh'g (July 11, 2002) (quoting *United States v. Boylan*, 898 F.2d 230, 257 (1st Cir.1990)).

Accordingly, at trial the Court should reject any effort by the defendants to use the Rule of Completeness as a backdoor to admit otherwise inadmissible hearsay.

## CONCLUSION

Acting together and with others around him, Gunby joined rioters who occupied the Capitol to stop the certification of the Electoral College vote. At trial, the evidence will prove beyond a reasonable doubt that the defendant committed each offense charged in the Indictment.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

By:     */s/ Kyle M. McWaters*
        Kyle M. McWaters
        Assistant United States Attorney
        D.C. Bar No. 241625
        601 D Street NW
        Washington, DC 20001
        (202) 252-6983
        kyle.mcwaters@usdoj.gov

        */s/ Shanai Watson*
        Shanai Watson
        Trial Attorney / Detailee
        New York Bar Reg. No. 5003165
        Department of Justice
        1301 New York Ave NW
        Washington, DC 20005
        (202) 616-0245
        shanai.watson@usdoj.gov